# FRANCES E. GODINE, PLAINTIFF, *v.* HENRIETTA KIDD, IMPLEADED WITH OTHERS, DEFENDANTS.

*Specific performance — contract of adoption — adequacy of consideration — part performance — personal transactions and communications — Code of Civil Procedure, sec. 829 — Laws of 1873, chap. 830; 1887, chap. 703.*

64  585
34ap611

64h 585
f 55ad320

64h 585
59ad523

64  585
43ap415

64h 585
166a 270

64h      585
71 AD ³220
170 NY ⁷557

64h      585
84 AD 508

In an action of ejectment it appeared that, in 1844, Elizabeth Knapp and Edwin Knapp, her husband, adopted one Henrietta Dillon, an infant, with the consent of her parents, the Knapps promising by parol to bring Henrietta up as their daughter, give her their name, make her their heir, and that the property they might have at their decease should go to her in case she should survive them. In 1849 one Parscyl devised the premises in question to the Knapps as tenants by the entireties. Henrietta Dillon lived with the Knapps until 1890, took and was married under the name of Knapp to Richard R. Kidd, and did not know until after marriage that they were not her parents. Edwin Knapp died in 1887, and subsequently, in 1890, Elizabeth Knapp died intestate.

In an action brought for the partition of the premises which had been so devised to Knapp and his wife a defense was interposed by Henrietta Kidd, in effect demanding the specific performance of the agreement made at the time of her adoption.

*Held*, that the defense was tenable.

That the question was one of contract, and was not controlled by the laws of this State, passed in 1873 and subsequently, giving heritable qualities to an adopted child.

That as the existence of the contract was proved by undisputed evidence, and as its enforcement would not result in injustice to third persons, and was not against public policy, the contract should be enforced.

That a consideration was made out, of benefit to the promisors, by reason of their having obtained the privilege of supervising Henrietta's education, and of treating her as a daughter, and also of harm to the promisees in parting with their child. That the adequacy of the consideration would not be weighed.

That, so far as the contract related to real estate, part performance took it out of the statute of frauds.

That the mother of Henrietta was a competent witness as to the contract.

That section 829 of the Code of Civil Procedure did not apply, since. although the contract of adoption was, in fact, made by the mother with the Knapps, Henrietta did not in any sense derive her title or interest in the property from her mother by assignment or otherwise, but did obtain the same from the Knapps.

EXCEPTIONS of the defendant Henrietta Kidd, taken upon a trial at the New York Circuit before the court and a jury, at which the court directed a verdict for the plaintiff that she, as a tenant in common, was entitled to the possession of one-fourth of the premises

described in the complaint, and for forty dollars damages for mesne profits, and also directed that the exceptions be heard in the first instance at General Term.

*Elliot Williams*, for the plaintiff.

*Warren Highley*, for the defendant.

O'BRIEN, J. :

The plaintiff, claiming to be the owner of a one-fourth interest in the premises in West Washington Place, brings this action to eject the defendant who is in possession of the premises. The complaint alleges that one Elizabeth Knapp died in June, 1890, being, at that time, seized in fee of the property; that her title thereto was derived through one William Parscyl, who died seized and possessed of the lot of land, on the 11th day of May, 1849, leaving a last will whereby he devised the same to Edwin Knapp and the said Elizabeth Knapp, his wife, and the survivor of them. Edwin Knapp died July 4, 1887, leaving Elizabeth Knapp, his wife, surviving, who thereupon became seized in fee in her own right of the premises in question, and continued in possession thereof until the time of her death ; that she having died intestate, the plaintiff, who was a niece of said Elizabeth Knapp and one of her heirs, became entitled to one undivided fourth part of such real estate. In answer to the claim thus made the defendant alleged, as a defense, that in April, 1844, her mother, with the consent and approval of her father, gave and surrendered her, then an infant of the age of one and a half years, to the said Elizabeth and Edwin Knapp, for and in consideration that they then and there promised and agreed to adopt and bring her up as their daughter, give her their name, make her their heir, and that the property they might have at their decease should go to her in case she should survive them ; that in pursuance of such agreement she was immediately taken by the Knapps, and lived with them and so continued until the time of their deaths, and was at all times treated by them as their daughter, bearing their name and being by them given in marriage under the name of Henrietta Knapp to Richard R. Kidd.

Upon the close of the evidence the court directed a verdict for the plaintiff (ordering the exceptions to be heard in the first instance

at the General Term), upon the ground that the equitable defense set up was not sufficient to exclude the heirs-at-law. It was thus assumed by the learned trial judge, just as the evidence warranted, that an agreement substantially as set forth in the defense was established. It was made to appear that Mr. and Mrs. Knapp, who were childless, made application to the mother of the defendant, when the latter was but eighteen months old, for permission to take and bring the child up, agreeing to treat her as their own daughter and in all respects to make provision for her as their own child, including a disposition of their property in her favor at their death. The agreement, so far as any obligation was imposed on a child towards parents, was fulfilled by the defendant; and, so for as concerns that part of the agreement by which the Knapps were to leave her their property, this was partially performed by the will made in favor of the defendant by Mr. Knapp who at the time claimed, and supposed himself to be, as did Mrs. Knapp, the owner, not only of the personal property which, by the terms of his will, went to the defendant, but also of the real estate, in which, however, together with his wife, he only took an estate by the entirety; which left the property in such position that it did not pass, as he intended it should under the terms of his will, to the defendant, but passed to his wife by reason of her surviving him.

Were it not for this misapprehension on the part of the Knapps as to the person who had the right to devise the property, no question would now be presented, because the evidence abundantly shows that the husband assumed that he had carried out the agreement by leaving all his property to the defendant and to his wife who survived him; under the like impression, that the property had been so devised that after her life estate it would go to the defendant. Mrs. Knapp died leaving no will. It thus happens that by reason of intestacy the property will descend to her heirs-at-law, unless the agreement which was set up by the defendant is sufficient to justify her retention thereof.

In effect, the defense seeks to obtain a specific performance of the agreement made by the Knapps with the parents of the defendant at the time of her adoption; and there being no real dispute upon the facts, the question is, whether a contract made in this State in 1844, between the parents of a child and its adopters in consideration

on the one hand of an agreement to take the child and bring her up as their own and give her the property they might have on their death, and on the other the surrender of the child by its parents, and the child growing up and serving and caring for her new parents until their death, can be enforced.

The adverse view upon this question taken by the learned trial judge was undoubtedly due to the importance attached by him to the laws passed in this State with reference to the adoption of children. He correctly says that "the law of this State, until the year 1873, never recognized such a thing as the adoption of children who were not the offspring of the parents. In 1873 an act was passed by which, in a certain sense, the relation of parent and child was established between the child of a stranger and a married man and woman with the mutual consent of both. In 1887 that was enlarged, so that a child adopted had heritable qualities and might take the property of the father or mother to the exclusion of those who otherwise would have been the heirs-at-law, provided there were no natural children of the persons adopting the child."

While, therefore, the act of 1873 must be regarded as the first formal enactment providing for statutory adoption, and thus, beyond question, legalizing the same, this very act (chap. 830, Laws of 1873), by its thirteenth section, recognizes the fact that adoptions had taken place prior thereto, because it provides that "nothing herein contained shall prevent proof of the adoption of any child heretofore made according to any method practiced in this State from being received in evidence," etc. While, therefore, adoption was not known to the common law, and was never in any way regulated by statute in this State until 1873, its existence prior to the latter date was undoubtedly recognized. We think, however, that the learned trial judge was unduly influenced by a consideration of the provisions relating to statutory adoption in determining the question presented for his consideration. It was not one as to whether there had been a formal adoption pursuant to some law or statute, which would have entitled the defendant by virtue thereof as an adopted child to succeed to the property of the adopting parents; but, as already said, the question was whether an agreement such as has been here established can be enforced in equity.

In the case of *Gall* v. *Gall* * (handed down herewith) this question has been considered by this court; and the views expressed by Mr. Justice TALCOTT in *Shakespeare* v. *Markham* (10 Hun, 322) have been referred to with approval. It was in the latter case said: "There is upon the authorities no doubt that, in a case where a certain and definite contract is clearly established, even though it involves an agreement to leave property by will, and it has been performed on the part of the promisee, equity in a case free from all objection on account of the adequacy of the consideration, or other circumstances rendering the claim inequitable, will compel a specific performance." Again, the courts require clearest evidence that a contract founded on a valuable consideration, and certain and definite in all its parts, should be shown to have been deliberately made by the decedent.

In his able review of the authorities in the Gall case, Mr. Justice BARRETT says it is true that those in which performance have been enforced were principally cases where specific property was agreed to be devised or bequeathed upon an adequate consideration. He further states: "We have found no case in this State where an agreement to leave the whole of one's estate, real and personal, to a particular person has been enforced. On the contrary, there are cases where specific performance of such a contract has been refused." He says: "It is vitally important that the statute of wills should be maintained in its integrity. * * * So important are these provisions with respect to testamentary disposition that it has been doubted whether, in any case, especially when the contract is sought to be established by parol testimony, so patent a means for their evasion as bills for specific performance should have been allowed. It is certain, however, that in this class of cases the ordinary rules which govern in actions to compel the specific performance of contracts, and which furnish reasonable safeguards against fraud, should not be extended, but should be rigidly applied. These rules require that the contract be certain and definite in all its parts; that it be mutual and founded upon an adequate consideration, and that it be established by the clearest and most convincing evidence. * * * That the remedy is a matter of judicial discretion, and that relief should be withheld where a decree for specific performance would work injustice to innocent third persons, or where it would be contrary to public policy."

* Reported, *post* p. 600.

Upon the application of these principles in the Gall case, it was held that the contract sought to be enforced "was not established with reasonable certainty. It was not made with parents for the benefit of an infant, but directly with an adult."

It will thus be seen that, while the courts are reluctant to enforce such contracts where there is the slightest suspicion of fraud, or the slightest doubt as to the existence and certainty of the contract, yet the law recognizes that specific performance will be decreed of a definite contract founded upon an adequate consideration which is established by the clearest proof. Where, therefore, the act of adoption is based upon a contract, it is not the law or statute regulating adoption that is to prevail, but the law relative to contracts. (Wharton on Conflict of Laws, § 251.)

Applying the principles thus laid down for our guidance, the conclusion to be reached in this case must necessarily depend upon the character and strength of the evidence adduced to support the contract alleged. In respect thereto, we have no more difficulty than did the learned trial judge in arriving at the conclusion, upon the testimony, that Mrs. Kidd, while an infant, was adopted by Mr. and Mrs. Knapp and "made substantially and virtually their child." The agreement made between these people and the mother of Mrs. Kidd, showing a complete surrender of the child to them on condition that they should have the care and custody of the child, free from any control or interference on the part of the parents, and upon their death should leave her their property, is clearly established. We have not only direct testimony as to the terms of the agreement, but all the surrounding circumstances unequivocally support its existence. So complete was the control vested in the Knapps that from 1844 to the date of Mrs. Knapp's death, in June, 1890, the defendant never knew but that she was actually the child of Mr. and Mrs. Knapp, and it was only after her marriage that she became aware of the fact that she was the child of other parents.

The enforcement of the contract here will not result in injustice to any third persons, nor is it against public policy; but in view of the literal way in which it has been performed, upon the part of the defendant's parents and her own, it would be an extreme hardship, and both inequitable and unjust, if she were now prevented, after all these years of performance on her part and that of her parents, from

enforcing it. Even though we should assume, therefore, that none of the arrangements between the parties was of original binding obligations upon the defendant's parents, yet the subsequent performance and fulfillment thereof by defendant and her parents, so that thereby the Knapps actually got all they bargained for, would furnish a sufficient consideration to support their promises as effectually as if the agreement had been of original binding obligation. What the Knapps bargained for was, at the very least, forbearance by and on the part of defendant's parents of some of their rights, and was an adequate and sufficient consideration for their promises and undertakings. It has frequently been held that the consideration for a contract or promise need not be adequate in point of value. If there be any consideration, the court will not weigh the extent of it; it has no means of scrutinizing the varied hidden motives and reasons that may have influenced the parties and induced them to enter into the contract, nor can it determine upon the prudence or propriety of the transaction. Where an offer is accepted by the party doing the act which forms the consideration, and when the promisor has had the benefit of the consideration for which he bargained, it is no answer in an action brought for a performance of the agreement, to say that the promisee was not bound by the contract; it is enough if the promisee did it on the faith of the undertakings of the promisor, and upon showing that the latter got the benefit of it. As said by Leake on Contracts (p. 613): "The adequacy of the consideration is for the parties to consider at the time of making the agreement; not for the court, when it is sought to be enforced." Here, with the consent of the defendant's parents, the Knapps obtained the privilege of supervising and directing the defendant's education, her life, habits and tastes, the formation and development of her character, and the privilege of treating her as their own daughter, and of being regarded and loved by her as her parents. They at the time were childless, and were no doubt actuated by the same feelings and instincts which ordinarily move lonely and childless people to adopt as their own the child of others; and that there was resultant benefit to them is abundantly established by the evidence. The defendant not only regarded them as her parents, but in all respects conformed to the strictest requirements of an affectionate and dutiful child.

Upon these facts, who would question the worth, adequacy and

sufficiency of the consideration received by the adopting parents? Lives that are drear and blank are thus oftentimes cheered and animated and filled with new hopes and ambitions, fresh impulses and awakened energies. These are the contributions of youthful love and affection and companionship to childless old age. But whether or not the results expected from adopting the defendant were in all respects realized, this in no way affects the adequacy of the consideration moving from the parents of the defendant and supporting the promise made by the Knapps. On the part of the parents and on the part of the defendant it was fully and completely performed, and all of the youth, early womanhood and a considerable portion of her married life, the years intervening between 1844 and 1890, were devoted by the defendant in performing those filial duties of affection and care which, according to all the evidence in the case, is shown to have been that of a loving daughter towards aged and, in their latter years, sickly parents. A contract which has been thus established, entirely free from doubt or suspicion, founded upon an adequate consideration, which has been fully performed on one side, and the intention to perform which on the other was only rendered abortive by a mistake as to the situation and ownership of the property, should be enforced in its entirety, unless some settled principle of law or equity would prevent its enforcement.

As already stated, there is abundant law to sustain the view that " where a certain and definite contract is clearly established, even though it involves an agreement to leave property by will, and it has been performed on the part of the promisee, equity in a case free from all objections on account of the adequacy of the consideration or other circumstances rendering the claim inequitable, will compel specific performance."

Though recognizing this well-settled law, the plaintiff insists, in addition to the other objections to defendant's right to retain the property, which have already been discussed, that there are two insuperable objections to her obtaining any relief. The first is, that as the property in question is real estate, and the agreement set up in the answer is a parol agreement, supported entirely by parol testimony, it cannot be enforced, because void by the statute of frauds, not being in writing. The answer to this, however, is that a verbal agreement that has been performed by one of the parties,

though made with reference to real estate, is taken out of the statute of frauds and is valid in law.

The second objection goes to the admissibility of the evidence of defendant's mother (which was the direct testimony offered as to the terms of the contract), upon the ground that such evidence was incompetent under section 829 of the Code of Civil Procedure. This section provides that, upon the trial of an action, a person from, through or under whom a party derives his interest or title, by assignment or otherwise, shall not be examined as a witness in behalf of the party succeeding to his title or interest, against a person deriving his title or interest from, through or under a deceased person, concerning a personal transaction or communication between the witness and the deceased person. We fail, however, to recognize any force in this contention, because we do not see that the defendant derived her interest or title by assignment or otherwise from her mother; but, on the contrary, her rights were obtained under a contract made, it is true, by the mother, but under the terms of which she derives from the Knapps her title and interest, if any, in and to the property. Were this a contract made by defendant's mother for her own benefit, which had been assigned to the defendant, then there might be some force in the suggestion. But it is clear that this is a case where the contract was made by the mother on behalf and for the benefit of the child; and her interest was in no way derived from or received through her mother. We think the test of this objection is to be found in a consideration of whether or not the mother could have maintained any action for this property, or whether she at any time, or under any circumstances, would have any interest therein. We think it reasonably certain that the conclusion to be arrived at must be that the mother could not maintain an action to enforce the contract for her own benefit, nor had she any interest at any time in the property to which the defendant succeeded. There is abundant authority to sustain the position that a person for whose benefit a contract is made may maintain an action thereon, although the consideration was one between the promisor and the third person. (*Todd* v. *Weber*, 95 N. Y., 181.)

Upon the law, therefore, as applied to the facts of this case, we are of opinion that there was no valid objection to the enforcement

of the contract, and upon the undisputed facts it was error on the part of the trial judge not to have granted the defendant's motion for a dismissal of the complaint.

The defendant's exceptions, therefore, to the refusal to rule in her favor should be sustained and the judgment reversed and a new trial ordered, with costs to defendant to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment reversed and new trial ordered, with costs to defendant to abide event.