## MULKEY et al. v. ALLEN et al.

No. 1201–5553.

Commission of Appeals of Texas, Section B.
March 4, 1931.

Crane & Crane, of Dallas, for plaintiffs in error.

Cockrell, McBride, O'Donnell & Hamilton and W. B. Harrell, all of Dallas, for defendants in error.

RYAN, J.

The district court sustained general demurrer to a petition filed by defendants in error (as plaintiffs in that court), alleging, in substance:

First. That J. F. Mulkey and A. T. Mulkey were husband and wife at and long prior to the birth of Lydia Allen and until their respective deaths, the said J. F. Mulkey having died intestate in January, 1925, and the said A. T. Mulkey in June, 1927; that the said J. F. and A. T. Mulkey "were ever childless."

That plaintiff Lydia Allen was the natural child of Thomas Smith and ——— Smith, when, in or about the year 1872, she being about seven years of age, her mother having died and her father being ill prepared to look after her, J. F. Mulkey obtained the consent of Lydia's father that he might legally adopt her as his child, under the name of Lydia Mulkey, she to become a part of his family, with the understanding and agreement that upon the death of the survivor of J. F. or A. T. Mulkey, the said Lydia should become entitled to J. F. Mulkey's one-half of the Mulkeys' property, as if she were his natural child.

That, beginning shortly after Lydia began to live in his family, J. F. Mulkey made like assurances to her and gave her to understand that she was his adopted child and would become entitled to his property, and "the said Lydia through all the duration of her remaining as a child in the family of the said J. F. Mulkey and wife, rested and abided under and in the light of such assurances and agreement and bestowed her love and affection and rendered services as his child, to the said J. F. Mulkey, implicitly relying upon the assurances of the said J. F. Mulkey that such was his understanding and agreement with her."

Second. It was further alleged that in or about the year 1872, when Lydia was a child, not more than seven years of age, J. F. Mulkey entered into a written contract with her said natural father by the terms of which, if he, the said Smith, would surrender the said child Lydia to the said J. F. Mulkey, he, the said Mulkey, would execute a statutory adoption of the child and he and his wife would rear the child as their own, and would give said child his one-half of all the property belonging to himself and wife upon the death of the survivor.

Said contract is alleged to have provided for the absolute and complete termination of the relation of father and child between said Thomas Smith and said child, and the delivery to the said Mulkey and wife of the exclusive and full custody and control of her; it was further alleged that immediately upon the execution of said written contract, delivery and custody of said child were given over to said Mulkey and wife and thereby said written contract on the part of said Thomas Smith became fully executed.

Third. That while the child Lydia was living in the family of J. F. Mulkey and wife, as their daughter, the said J. F. Mulkey specifically and definitely agreed with her "that in consideration of her being and remaining in his home in the relation to him of child to parent, as she did until her marriage, she should receive, upon his death, or upon the death of his wife, should the latter survive him, all his one-half of the property belonging to the community estate of himself and wife, and that said contract and understanding and agreement between said plaintiff and the said Mulkey were repeatedly re-affirmed by the said J. F. Mulkey through express agreements, declarations and course of conduct."

Plaintiffs below alleged further their inability to state with more particularity the terms of the contracts and agreements upon which they rely, the date thereof, or the circumstances under which made, save that the alleged contract to adopt and to give the child the said J. F. Mulkey's one-half of the community property were made and entered into originally about the year 1872, and the alleged agreements and contracts were, as plaintiffs believe and allege the fact to be, partly oral and partly in writing; that the written agreement was in possession of said J. F. Mulkey and, as plaintiffs are informed and believe, thereafter in the possession of

his wife, and should now be in the possession of the defendants, who were given notice to produce same upon trial or secondary evidence thereof would be offered.

Fourth. It was further alleged in paragraph VII of the petition that:

"Should the plaintiff Lydia Allen be not entitled to the relief as hereinabove sought, then the said Lydia Allen and her children, Odessa Allen Wilson, Cyrene Allen Duff, Adell Allen Fowler and Fletcher Allen, come now and alternately seek relief as follows: They show to the court that on to-wit, August 8, 1923, the said J. F. and A. T. Mulkey did execute a written instrument which was not executed in the manner and with the formalities required to constitute same a valid will and testament, but which was and constituted an agreement into by and between them and in behalf of these plaintiffs, by the terms of which each undertook to convey to the survivor his or her interest in the aforesaid property, and that upon the death of the survivor their properties should go in a designated manner, and among the directions as given in said agreement was the direction that the following plaintiffs should be entitled to the following bank stock, to wit:

"Lydia and Charley Allen, $3,000 of Dallas Trust and Savings Bank Stock;

"Odessa Allen Wilson, $2,000 of Dallas Trust and Savings Bank Stock;

"Cyrene Allen Duff, $2,000 of Dallas Trust and Savings Bank Stock;

"Adel Allen Fowler, $2,000 of Dallas Trust and Savings Bank Stock;

"Fletcher Allen, $2,000 of Dallas Trust and Savings Bank Stock;

"—meaning, to the respective amounts, par value of said stock, which stock was, at the date of the death of either the said J. F. Mulkey or A. T. Mulkey, as well as continuously since and now, of the value of $155 per share; that is to say, $3,000 of said stock was and is of the value of $4,650; and $2,000 thereof was and is of the value of $3,100.

"That if for any reason the said Lydia Allen is not entitled to the specific relief hereinabove sought, then in any event she and her said husband and children are entitled to a decree vesting them with title to such an interest in the properties and estate of the said J. F. Mulkey and A. T. Mulkey as will be equivalent to the value of said bank stock, the title to which was intended and agreed to be given to them by the terms of said written agreement aforesaid."

That said instrument was in the possession of the said J. F. Mulkey and A. T. Mulkey "and is or should be in the possession of the defendants at this time, and defendants are given notice to produce same upon the trial hereof, or secondary evidence of the contents thereof will be offered."

The petition then continues:

"That in obedience to the said understanding and agreements, the said Lydia's own father did surrender to the said J. F. Mulkey the custody and control of the said Lydia, himself completely relinquishing such control and custody, and continuously thereafter until her marriage to the plaintiff C. L. Allen the said Lydia so continued as a member of the family of the said Mulkey and wife, going under the name of Lydia Mulkey, rendering to the said J. F. Mulkey and wife, the same services, and bestowing upon them the same love and affection, as if she were their own child, she all the while having been given by the said J. F. Mulkey to understand that she was his legally adopted child. That the said Lydia married the plaintiff C. L. Allen on the 16th day of October, 1887, with the full consent of the said J. F. Mulkey, and ever thereafter the said J. F. Mulkey and wife treated the said C. L. Allen as their son-in-law, and universally introduced him as such. That continuously up to the date of the death of the said J. F. Mulkey both the plaintiff Lydia and her husband fully understood that the said Lydia was the legally adopted child of the said J. F. Mulkey, and neither of them was disillusioned until immediately following the death of the said J. F. Mulkey, when they were advised by his surviving wife, A. T. Mulkey, that no legal adoption had been made of the plaintiff Lydia."

Fifth. It was further alleged that J. F. and A. T. Mulkey acquired and possessed at their respective deaths an estate consisting of community property of the approximate value of $112,000 (the real estate of substantially the value of $15,550 and personal property consisting of cash on hand and deposit, stocks, bonds, promissory notes of various parties, and household and kitchen furniture of substantially the value of $95,971.19, totaling $111,521.19).

Plaintiffs' prayer was for:

"* * * Specific performance of the contracts and agreements of the said J. F. Mulkey, as hereinabove set forth, to adopt her as his child and for her to have his portion of said property, being one-half of the properties hereinabove particularly described, and vesting in the said Lydia Allen title to said property; and if for any reason the said Lydia Allen be not entitled to such relief, that she have judgment for the properties and the values thereof as awarded to her under the terms of said written instrument of August 8th, 1923, as described in paragraph VII thereof, and that the remaining plaintiffs herein be likewise awarded judgment and decree for their portion of said properties as awarded to them under said written instrument of date August 8th, 1923. And plaintiffs pray that a partition and division

be made setting apart to them and to each of them, in kind, the properties to which they or each of them may be further entitled, or if it be found that said properties or any portion of them are incapable of partition, that a sale thereof be had and plaintiffs' portion be set apart to them out of the proceeds of said sale. And plaintiffs pray for such other and further relief, general or special, legal or equitable, as may appear proper and as in duty bound will ever pray."

The general demurrer having been sustained, plaintiffs below refused to amend, whereupon the trial court dismissed the cause at plaintiffs' cost.

On appeal, the Honorable Court of Civil Appeals found that the plaintiffs below declared upon three contracts, viz.: (1) One made by and between Thomas Smith and J. F. Mulkey; (2) one made between Lydia Allen and J. F. Mulkey; and (3) one made on August 8, 1923, in writing between J. F. Mulkey and A. T. Mulkey, not executed in the manner and with the formalities required to constitute same a valid will and testament, by the terms of which each undertook to convey to the survivor his or her interest in the property owned by them, and that upon the death of the survivor their properties should go in a designated manner; among the directions given in said agreement was one that certain designated property and stocks should be turned over to Lydia Allen and the other plaintiffs in the trial court, as set out in paragraph VII of their amended original petition.

The Honorable Court of Civil Appeals concluded:

First, that the general demurrer was properly sustained as to the 3rd contract above designated because it was testamentary in character and not executed with the formalities required to constitute a valid will; this conclusion was not complained of in appellants' motion for rehearing and the Court of Civil Appeals therefore did not further consider it on such rehearing.

Second, that in so far as it was sought to enforce specific performance of said second contract, the demurrer was properly sustained as to the real estate involved, because the contract as alleged, not being wholly in writing, is in contravention of the statute of frauds.

Third, that the demurrer to the first contract, generally, and to the second contract insofar as personal property is involved, in the latter, was improperly sustained, and the judgment of the trial court was reversed and the cause remanded for trial. 19 S.W.(2d) 936.

To review such judgment of reversal, this application for writ of error was granted.

· Opinion.

█ The first contract alleged to have been made in 1872 between Smith (the child's father) and Mulkey is void, on the authority of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216, because, as said by the court in that case, the consideration was the complete relinquishment by the father of his child to another, merely for the child's enrichment and the bartering away of the child for a property return; the contract, as alleged in the petition, contemplated that complete custody and control should pass from the natural father to the adopting party.

In the Bridgewater Case a verbal contract was entered into by the child's father, at that time his only surviving parent, with John W. Davis, whereby the father contracted to surrender the child's custody and control to Davis, a single man who never married, who in turn agreed upon that consideration to rear the child, give him the care and rights of a son, make him his heir, and leave to him at his death all of his property. The child's custody accordingly was taken over by Davis. and the child's father never thereafter had possession of or exercised any control over him, but all such was vested in and exercised by Davis. The trial court's findings of fact, adopted by the Court of Civil Appeals, show that Davis substantially carried out and performed his part of the contract, except that he failed to leave any or all of his property at his death to the child and died intestate; the child always bestowed on said Davis the attention, affection, and obedience that a son usually gives to a father and performed chores and services around the home place as needed, from his ninth year to the death of Davis in 1911.

The district court rendered judgment in favor of Hooks, the administrator of the estate of John W. Davis, deceased, and against the child, Bob Bridgewater. Upon appeal the Court of Civil Appeals for the First Supreme Judicial District upheld the contract, reversed the trial court's judgment, and rendered judgment in favor of Bob Bridgewater establishing his right and title to all of the property, real and personal, belonging to the estate of John W. Davis, subject to the right of Hooks, the administrator, to administer the estate under the orders of the county court, in accordance with the law governing such administrations. 159 S. W. 1004.

The Supreme Court granted writ of error, reversed the judgment of the Court of Civil Appeals, and affirmed that of the district court (111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216), and in so doing announced two controlling propositions, or principles of law, both of which are applicable to this case, viz.:

■■ First. That a parent has no property interest in his child, should not be permitted to deal with it as property, and therefore an agreement by which a father attempts to renounce the relation to a son imposed by nature and to surrender his powers and duties to another, for the child's financial advantage, is contrary to public policy, is not a valid contract, and can constitute no consideration for one whether for real estate or for personalty.

Second. A parol contract to leave real property to one on death is not excepted from the requirement that surrender of possession is indispensable in order to avoid the effect of the statute of frauds (Rev. St. 1925, art. 3995), by the fact that the contract itself contemplates retention of possession by the owner during his lifetime.

Under the above first principle of law, it is immaterial whether the contract is in writing or not—it is void, and therefore the alleged agreement of 1872 between Davis and the child's father is unenforceable.

Under the second principle of law above stated, so much of the alleged verbal contract between Lydia Allen and J. F. Mulkey as may pertain to real estate is void because in violation of the statute of frauds, and this brings us to the question whether such alleged verbal contract between Lydia Allen and J. F. Mulkey is properly pleaded as against a general demurrer, in so far as the personal estate is concerned.

Defendants in error rely principally on Jordon v. Abney, 97 Tex. 296, 78 S. W. 486, to sustain the affirmative thereof.

In that case the Supreme Court in answer to certified questions held:

First. There is a distinction between a contract to adopt and one to leave property at death; a mere contract to adopt, followed by the assumption and performances of the duties of parent and child, and the execution of adoption papers not filed for record, do not comply with the statute regulating adoption and do not establish the right of inheritance thereby provided as a consequence of lawful adoption, which right arises by operation of law, from the acts of the parties made in compliance with the statute, and does not depend on or arise from contract. But a contract between two persons upon valuable consideration, when sufficiently certain, that the will, at his death, leave property to the other, is enforceable. where no statute is contravened.

Second. A specific performance of such contract, if validly made, may be enforced and cannot be defeated by a will bequeathing the property to some one else, since that only takes effect after death.

It also appeared in that case that an agreement was alleged on the part of Mrs. Ogle, the surviving widow, after her husband's death, that in consideration of the female plaintiff continuing to perform the specific services and duties, she should have all of Mrs. Ogle's property at her death. The court held that the alleged contract made while she was covert did not bind her and the mere continuance, after her husband's death, of the pre-existing conditions would not constitute it a contract on her part, but a new agreement after her discoverture, with all the essentials of a valid contract was alleged, and this was held, the statute of frauds apart, sufficient to bind the property left at her death.

Here, there was no contract alleged between Lydia Allen and Mrs. A. T. Mulkey after the latter's discoverture, but Mrs. Allen's claim, if any she have, must rest upon a valid contract for a valuable consideration made between her and J. F. Mulkey during the latter's lifetime, disconnected from the alleged contract to adopt, claimed to have been made between J. F. Mulkey and Mrs. Allen's father, and such contract must be properly pleaded.

The petition after declaring on the first contract alleged to have been made in 1872 between Mrs. Allen's father and J. F. Mulkey, which as stated above is unenforceable, proceeds in the first paragraph thereof as follows, viz.: "And the said Lydia throughout all the duration of her remaining as a child in the family of the said J. F. Mulkey and wife, rested and abided under and in the light of such assurances and agreement and bestowed her love and affection and rendered services as his child, to the said J. F. Mulkey, implicitly relying upon the assurances of the said J. F. Mulkey that such was his understanding and agreement with her."

In the second paragraph of said petition, after alleging that said first contract was in writing and fully complied with by Mrs. Allen's father in the full and complete termination by him of the relation of the child to Mulkey, proceeds as follows, viz.: In compliance with such agreement, "the plaintiff should receive the said J. F. Mulkey's part of the property at the death of the survivor of himself and his said wife; delivery of said child and the custody of her were given over to the said J. F. Mulkey and his wife, and thereby said written contract on the part of the said Thomas Smith became fully executed."

In the third paragraph of said petition it is averred:

"That in consideration of her being and remaining in his home in the relation to him of child to parent, as she did until her marriage, she should receive, upon his death, or upon the death of his wife should the latter survive him, all his one-half of the property belonging to the community estate of himself and wife, and that said contract and

understanding and agreement between said plaintiff and the said Mulkey were repeatedly reaffirmed by the said J. F. Mulkey through express agreements, declarations and course of conduct."

Also:

"That in obedience to the said understanding and agreements, the said Lydia's own father did surrender to the said J. F. Mulkey the custody and control of the said Lydia, himself completely relinquishing such control and custody, and continuously thereafter until her marriage to the plaintiff C. L. Allen, the said Lydia so continued as a member of the family of the said Mulkey and wife, going under the name of Lydia Mulkey, rendering to the said J. F. Mulkey and wife, the same services, and bestowing upon them the same love and affection, as if she were their own child, she all the while having been given by the said J. F. Mulkey to understand that she was his legally adopted child. That the said Lydia married the plaintiff C. L. Allen on the 16th day of October, 1887, with the full consent of the said J. F. Mulkey, and ever thereafter the said J. F. Mulkey and wife treated the said C. L. Allen as their son-in-law, and universally introduced him as such. That continuously up to the date of the death of the said J. F. Mulkey both the plaintiff Lydia and her husband fully understood that the said Lydia was the legally adopted child of the said J. L. Mulkey, and neither of them was disillusioned until immediately following the death of the said J. F. Mulkey, when they were advised by his surviving wife, A. T. Mulkey, that no legal adoption had been made of the plaintiff Lydia."

■ The said alleged contract between Mulkey and Mrs. Allen, as pleaded, is too indefinite and uncertain in not stating even approximately, when it was made nor when it would terminate, nor its terms—only a conclusion that Mulkey would leave his property to her; there is no averment that she at any time agreed to do anything or that there was any consideration promised or paid by her, but the entire pleading is referable to the first or alleged written contract of 1872 between Mrs. Allen's father and J. F. Mulkey.

■ A petition must be clear, definite, and certain, and advise the defendant what he is expected to meet on the trial.

While the statute now requires the petition to contain a "concise" statement of the cause of action (Rev. Civ. Stat. 1925, art. 2003), instead of a "full and clear" statement, as formerly—such statement must in logical and legal form state the facts constituting the plaintiff's cause of action (Rev. Civ. Stat. 1925, art. 1997); the rule by which the sufficiency of a pleading is tested is the same, and facts, not conclusions, must be averred. Munk v. Weidner, 9 Tex. Civ. App. 491, 29 S. W. 409, 411; Negociacion v. Love (Tex.

Civ. App.) 220 S. W. 224; M., K. & T. Ry. v. Poole, 104 Tex. 36, 133 S. W. 239; Ware v. Shafer, 88 Tex. 44, 29 S. W. 756. This is the doctrine strictly followed in cases like this of claims against dead men's estates, resting entirely in parol. Alexander on Wills, § 136; Page on Wills, § 92. As said in Munk v. Weidner, supra, the terms of the agreement must be so sufficiently clear as to evidence, with a reasonable certainty to show the intention of the parties as to what is done or to be done by the parties, and must be stated with the same degree of certainty. "Such contracts are looked upon with suspicion, and are only sustained when established by the clearest and strongest evidence." Dicken v. McKinley, 163 Ill. 318, 45 N. E. 134, 135, 54 Am. St. Rep. 471; Dicks v. Cassels, 100 S. C. 341, 84 S. E. 878, 879; Kinney v. Murray, 170 Mo. 674, 71 S. W. 197, 202; Owens v. McNally, 113 Cal. 444, 45 P. 710, 33 L. R. A. 369.

■ As against a general demurrer, a petition will be given every reasonable intendment in its favor (Sovereign Camp v. Piper [Tex. Civ. App.] 222 S. W. 649; Jackson v. Compress Co. [Tex. Civ. App.] 202 S. W. 324; Aynesworth v. Peacock [Tex. Civ. App.] 225 S. W. 866); but when after every construction favorable to its sufficiency is indulged, it either fails to allege some element essential to a cause of action or negatives plaintiff's right to a recovery, the general demurrer must be sustained. Golden v. Odiorne, 112 Tex. 550, 249 S. W. 822; City of Laredo v. Russell, 56 Tex. 398; Schlinke v. De Witt County (Tex. Civ. App.) 145 S. W. 660.

■ A contract cannot be presumed to be clearer or more specific than alleged to be in the petition, and of course must be as definite as the proof. Ward v. Stuart, 62 Tex. 333. The pleading does not allege that anything done by Lydia Allen was in reference alone to contract No. 2, disconnected from contract No. 1, but does show that what she did was with reference to the void adoption contract (No. 1) made by her father, void under the authority of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216.

We think the petition shows on its face that there was but one contract made, viz., the one between Smith and Mulkey, and that all the other allegations therein were but a reaffirmance of that contract, which, as stated above, being contrary to public policy, conferred no rights.

We accordingly recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.