41 So.2d 385

### W. E. BELCHER LUMBER CO., Inc. v. HARRELL.

### 7 Div. 950.

Supreme Court of Alabama.
June 23, 1949.

Grady Reynolds and Reynolds & Reynolds, of Clanton, and Paul O. Luck, of Columbiana, for appellant.

Ellis & Fowler, of Columbiana, for appellee.

LIVINGSTON, Justice.

James Gale Harrell, a minor by his mother as next friend, brought suit against the W. E. Belcher Lumber Company, a corporation, for injuries sustained by him in a collision between a truck belonging to the defendant and an automobile owned and operated by plaintiff's brother Cecil Powell Harrell. The plaintiff was six years of age at the time he was injured and was standing in the rear of the car and back of the front seat. There were other occupants of the car. The collision occurred in Shelby County, Alabama, on a Saturday afternoon while traveling over a dirt road leading from Boothton to Montevallo. The truck was traveling from Boothton towards Montevallo and the automobile from Montevallo to Boothton.

The defendant has its office and place of business at Centerville, Bibb County, Alabama, and is engaged in the general manufacture and sale of lumber.

The cause was submitted to the jury on counts of simple negligence and wanton conduct of the driver of the truck. No point is made in brief as to the sufficiency of either count of the complaint. The defendant interposed plea of general issue, in short by consent, with leave, etc. The jury found for the plaintiff and assessed his damages at $7500.00. Hence this appeal by the lumber company.

One question relative to defendant's liability turns on whether or not the driver of the truck at the time the injuries occurred was the agent of the defendant and acting within the line and scope of his employment.

It is undisputed that W. E. Belcher was the president of the W. E. Belcher Lumber Company, Inc.; that one H. D. Jackson was employed by defendant as a "tractor driver" and was engaged in "snaking logs" on the yards of defendant, but some months before had driven a truck for defendant. One Payne was also employed by defendant in the veneering mill. Payne and his wife were living at Centerville, but their furniture was located at Boothton. Payne had wanted to move into a house on the property of defendant, and went to see W. E. Belcher about getting a truck to move him.

The first witness called for plaintiff was his father, S. P. Harrell. This witness testified that some six weeks after the accident, he and his son Cecil Powell Harrell went to the office of W. E. Belcher, located on the yards of the W. E. Belcher Lumber Company, Inc., and talked to him about the accident. The witness was then asked, in substance, to relate what Belcher said in respect to his authority to act for the defendant as to Jackson's employment by the defendant at the time plaintiff was injured. In other words, plaintiff sought to prove by the statements of Belcher that he (Belcher) was the agent of defendant and that through his authority Jackson was the agent or employee of the defendant company acting within the line and scope of his employment at the time plaintiff was injured. Objections were interposed to this method

of proof because it was not shown that Belcher at the time was the agent of the defendant company with authority to bind the defendant by his admissions and, further, that the agency of Belcher could not be proven by the statements of the alleged agent. The further objection was made that, Belcher being dead at the time of the trial, statements made by him were not admissible under the provisions of the so-called "dead man's" statute. Section 433, Title 7, Code.

■ Defendant's answers to interrogatories propounded to it by plaintiff were introduced in evidence. The record does not show clearly at what stage of the proceeding they were introduced but, for aught appearing, they were introduced during the examination of witness Harrell and before the witness related his conversation with Belcher. We are not to be understood as intimating that the time of the introduction of said answers is important. These answers clearly prove that W. E. Belcher was president of the defendant company at the time plaintiff was injured, and also at the time witness Harrell, father of plaintiff, talked to Belcher some six weeks later. The answers admit that the truck involved in the accident was the property of the defendant.

As to the agency of Jackson, and as to whether he was acting within the line and scope of his authority, the defendant's answer made a prima facie case for the plaintiff, and he might well have rested his case there as to those issues. However, over the objections above set out, witness Harrell was permitted to testify to statements made by Belcher to the effect that Jackson was the agent of defendant acting within the line and scope of his authority at the time plaintiff was injured.

■ Witness Harrell was not disqualified under section 433, supra, for the reason that he was not pecuniarily interested in the outcome of the suit within the meaning of that section. As to analogous principles, see Kuykendall v. Edmondson, 205 Ala. 265, 87 So. 882; Atlantic Coast Line R. Co. v. Flowers, 241 Ala. 446, 3 So.2d 21.

■ Defendant was compelled to meet the plaintiff's prima facie case made by showing that the truck which struck the car in which he was riding was owned by defendant company, thereby raising the administrative presumption that the driver of the truck was defendant's agent acting within the line and scope of his employment. This the defendant attempted to do by witnesses Payne and Jackson. Payne testified in substance that he told Mr. Belcher that he wanted to move out there in a "little old shack," and Mr. Belcher said that if he wanted to get somebody to drive the truck he could get one and if Payne would put the gas and oil in the truck, as he (Payne) had no driver's license; that he went down to see Jackson, who had a driver's license, about driving the truck and told him what Mr. Belcher had said; that Jackson went to see Mr. Belcher and came back and they took the truck and went for the furniture. That after loading the furniture, he, his wife and Jackson, who was driving, started back to Centerville; that Jackson was driving for him (Payne).

Jackson testified in substance that Payne came to see him about driving the truck; that he went down to see Mr. Belcher and asked him if he had told Payne that he could have the truck, and Mr. Belcher said that he had; that the truck was out at Mr. Belcher's house, and that he and Payne get in it and went to Boothton, loaded Payne's furniture in the truck and started back to Centerville; that Payne put gas and oil in the truck and paid for it. Jackson further testified that he and Payne left Centerville around eleven or eleven thirty in the morning; that he was driving the truck for Payne.

Clear enough, the testimony of Payne and Jackson made the question of Belcher's agency and authority to act for the defendant one for the jury. The defendant's theory was that Belcher loaned the truck to Payne and that Jackson was the agent of Payne; that the situation was one of bailor and bailee. If the relationship of bailor and bailee did exist it was through the agency and authority of Belcher, the president of defendant company. Defendant cannot prove such relationship and at the same time deny the authority of the agent (Belcher) making it. Clearly, the agency

of Belcher was a question for the jury. See, also, Bryson v. Phelps, 23 Ala. App. 346, 125 So. 795; certiorari denied 220 Ala. 389, 125 So. 798.

Defendant insists that the refusal of the general charge for the defendant as to count two of the complaint, the wanton count, was reversible error.

Plaintiff's testimony is to the effect that the defendant's truck and the automobile in which plaintiff was riding collided on a dirt road near the crest of a hill and on or very near a sharp curve in the road. The curve in the roadway was to the right as approached by defendant's truck. For a distance of some three hundred yards in the direction from which the truck approached the curve, the roadway was on a level and was straight. In the middle of the roadway there was a ridge or "hog back". The defendant's truck approached the curve straddle of the "hog back" at a speed estimated by some witnesses of from sixty to sixty-five miles per hour. That the car in which plaintiff was riding was approaching the crest of the hill at a speed of twenty to twenty-five miles per hour, and on the right side of the roadway in the direction in which it was traveling. That defendant's truck, starting onto the curve and on the downgrade, swerved to the right in an attempt to miss the automobile; that the rear end of the truck swerved across the road and struck the automobile, which was as far to its right side of the road as it could get. There is also some evidence to the effect that Jackson, the driver of defendant's truck, was drinking at the time he and Payne, with the help of others, loaded Payne's furniture on the truck. The question of Jackson's wantonness was one for the jury. Lindsey v. Kindt, 221 Ala. 190, 128 So. 139.

Plaintiff's injuries consisted of a broken arm, lacerations of the head and face; severe injury to one hand, permanent scars on his face. Plaintiff testified that he still has severe headaches, some six years after the accident, and still cannot use the injured hand but very little. Plaintiff was carried to a hospital in Birmingham, where he remained for seven or eight days. He was in a cast for several months.

The jury was authorized to award punitive damages under the wanton count. Lindsey v. Kindt, supra. Under the evidence in this record, we are not willing to say that the verdict of the jury was excessive. We have treated the questions presented in brief, and find no error calling for a reversal in the record.

Affirmed.

BROWN, FOSTER and SIMPSON, JJ., concur.