58 So.2d 584

## PHILLIPS v. FREDERICK.

### 6 Div. 230.

Supreme Court of Alabama.

Nov. 23, 1951.

Rehearing Denied May 15, 1952.

Fite & Fite, Jasper, for appellant.

Chas. E. Tweedy, Jr., Jas. L. Beech, Jr., and Still Hunter, Jasper, for appellee.

LIVINGSTON, Chief Justice.

This appeal is from a decree of the Circuit Court, in Equity, of Walker County, Alabama, allowing a claim for $7,000.00, filed against the estate of John W. Phillips, deceased, by Paul Frederick, a minor, by his next friend, Ola Gregory, who is the maternal grandmother of the minor.

John W. Phillips, a resident citizen of Walker County, Alabama, departed this life intestate on or about January 26, 1950. On February 6, 1950, E. C. Phillips was granted letters of administration on the estate of John W. Phillips, deceased. On June 26, 1950, the administration of said estate was removed to the Circuit Court, in equity, of Walker County.

The claim of Paul Frederick was filed in both the Probate Court of Walker County and the Circuit Court of Walker County, on August 3, 1950, and, as originally filed, claimed the sum of $12,000.00. The claim was later reduced by amendment to $7,-000.00. On October 4, 1950, the administrator filed, and gave notice, that the claim of Paul Frederick was disputed in whole and would be contested. On October 26, 1950, Ola Gregory demanded a jury for "the trial of the question" of the validity of the claim.

A motion to strike the amended claim of Paul Frederick was overruled. The trial court proceeded to make up the issues between the parties, and, in the language of appellant's brief, appellant's defenses against the claim were stated to be: "We deny that any such agreement was made as set up in the claim, for one defense, and also we say that the agreement set up in the claim was void under the Statute of Frauds, and another defense is that the said agreement was against public policy and also void for that reason, and also that said agreement is vague and indefinite."

On the issues made and the evidence submitted to them the jury returned a verdict sustaining the claim of $7,000.00. The court rendered a decree on the verdict. and this appeal followed.

The basis of the claim of Paul Frederick against the estate of John W. Phillips is, in substance, an oral agreement made by Alene Frederick, the mother of Paul Frederick, with the said John W. Phillips, whereby Phillips was to have the care, custody and control of the minor during his, Phillips' lifetime, and, in consideration whereof, Phillips agreed to care for, feed, clothe and educate, including a college education, the minor, and that in the event. Phillips died before the minor received his education, the minor was to receive $7,000.00 for that purpose.

Claimant's evidence tended to prove the following facts:

John W. Phillips died in Walker County, Alabama, in January, 1950. He was a widower and never had any children. He left considerable property, both personal and real. Surviving him was one brother, who was made the administrator of his estate, and one sister, Mrs. Dora P. Handley, both over the age of 21 years. John W. Phillips was about 68 years of age when he died. Mrs. Ola Gregory was his housekeeper at the time of his death, and had been for some 18 or 20 years. Mrs. Gregory was the maternal grandmother of Paul Frederick. Douglas Frederick and Alene Frederick are the parents of Paul Frederick. During the month of July, 1945, Douglas, Alene and Paul Frederick visited Ola Gregory for some time in the home of John W. Phillips, deceased. Paul Frederick was then some 13 or 14 months old. The deceased became attached to the child and on several occasions asked that he be allowed to adopt him. The mother refused. The deceased then proposed that he be allowed to keep the baby as long as he, Phillips, lived and he would give him a complete education, including four years of college, which he could do, "with careful handling, for seven thousand dollars." The deceased also told Alene Frederick that "regardless of what happens to me, it will be fixed whether I live or die." Alene

Frederick agreed to the proposal of the deceased and left the infant, Paul Frederick, with the deceased when she returned to her home, and the infant remained with Phillips as long as Phillips lived.

Claimant's evidence further tended to show that Phillips loved the child; that he kept the child with him as much as he could, considering the child's age; that the child slept with Phillips, and that Phillips was good and kind to him as long as he lived.

Mrs. Gregory testified, in substance, that, about two weeks before he died, Phillips called her to his bedside and told her that it looked like he was at the end of the trail; gave her a ring with several keys on it; pointed out one key and told her to hold on to that key, that he had a "lot of stuff in a locker at the bank," and that if anything happened to him, Phillips, for her to go down to the bank and get what was in the locker and look through it; that about two days after Phillips died she turned the key over to Mr. E. C. Phillips and never did see what was in the bank.

Appellant does not argue the applicability of the Statute of Frauds and that question is therefore waived. Although there are some thirty assignments of error, two principal questions are presented. First, is the alleged agreement contrary to public policy and for that reason null and void? Second, is Alene Frederick, the mother of claimant Paul Frederick, a competent witness in view of section 433, Title 7, Code 1940,—the so called "dead man's statute"?

The first inquiry is one of first impression in this jurisdiction. The authorities appear to be divided. An annotation of the decisions will be found in 15 A.L.R. at page 223, following the case of Hooks v. Bridgewater.

The Hooks case, 111 Tex. 122, 229 S.W. 1114, 1118, 15 A.L.R. 216, declares a contract, similar to the one here under review, contrary to public policy. The Supreme Court of Texas there said:

"Aside from the invalidity of the contract as to the land of the estate under the statute of frauds and its being incapable of enforcement because there was no possession by the plaintiff of the land, it is a character of contract which should be held void as a matter of public policy. A parent has no property interest in his child and should not be permitted to deal with his child as property. It was so held in Legate v. Legate, 87 Tex. 248, 28 S. W. 281; but the proposition needs no authority for its support. The law should not encourage the relinquishment by parents of their children and the renunciation of a sacred relation imposed by nature merely for the children's enrichment by placing the seal of validity upon a contract in which a parent in effect barters his child away for a property return. It is more concerned in fostering and maintaining that relation and guarding its valuable and wholesome influences than in promoting the child's financial prosperity. Let it be once held that a parent's contract of this kind is valid and may be enforced, and every parent will be free to transfer his children to any one willing to pay them well for the bargain. We are unwilling to subscribe to such a doctrine. It tends to the destruction of one of the finest relations of human life, to the subversion of the family tie, and to the reversal of an ordering of nature which is essential to human happiness and the security of society. It reduces parental duty and the child's welfare to the sordid level of financial profit, and would license the easy surrender of that duty for merely the child's financial advantage. The custody of a child is not a subject matter of contract and therefore can constitute no consideration for a contract. The attempted agreement here was therefore not a contract. Ibid. Davis could not have enforced it, because based upon a void consideration. If Davis could not have enforced it against the plaintiff, it is not enforcible in the plaintiff's favor."

The foregoing rule was reaffirmed in the case of Mulkey v. Allen, Tex.Com.App., 36 S.W.2d 198.

On the other hand there are many cases in other jurisdictions which have upheld contracts or agreements similar to the one under review. See 15 A.L.R. Notes, p. 223.

In Godine v. Kidd, 64 Hun. 585, 19 N.Y. S. 335, 338, it was said:

"The enforcement of the contract here will not result in injustice to any third persons, nor is it against public policy; but, in view of the literal way in which it has been performed upon the part of the defendant's parents and her own, it would be an extreme hardship, and both inequitable and unjust, if she were now prevented, after all these years of performance on her part and that of her parents, from enforcing it. Even though we should assume, therefore, that none of the arrangements between the parties was of original binding obligation upon the defendant's parents, yet the subsequent performance and fulfillment thereof by defendant and her parents, so that thereby the Knapps actually got all they bargained for, would furnish a sufficient consideration to support their promises as effectually as if the agreement had been of original binding obligation. What the Knapps bargained for was, at the very least, forbearance by and on the part of defendant's parents of some of their rights, and was an adequate and sufficient consideration for their promises and undertakings. It has frequently been held that the consideration for a contract or promise need not be adequate in point of value. If there be any consideration, the court will not weigh the extent of it. It has no means of scrutinizing the varied hidden motives and reasons that may have influenced the parties, and induced them to enter into the contract, nor can it determine upon the prudence or propriety of the transaction. Where an offer is accepted by the party doing the act which forms the consideration, and when the promisor has had the benefit of the consideration for which he bargained, it is no answer, in an action brought for a performance of the agreement, to say that the promisee was not bound by the contract. It is enough if the promisee did it on the faith of the undertakings of the promisor, and upon showing that the latter got the benefit of it."

We also quote from Van Tine v. Van Tine, N.J.Ch., 15 A. 249, 251, 1 L.R.A. 155, as follows:

"I cannot see how obligations so voluntarily assumed by a citizen, so affecting the highest welfare of an infant of the tenderest years, can be regarded as otherwise than the most sacred and binding."

Appellant also argues that there is a lack of mutuality between the parties and for that reason the contract is unenforcible.

On this point the Supreme Court of Missouri in the case of Healey v. Simpson, 113 Mo. 340, 20 S.W. 881, 883, said:

"The surrender by the mother of all control of the child, and the services and companionship of the latter, constituted valuable considerations for the promise of Brewster and his wife that she should 'have and inherit from the estate of said parties * * in the same manner and to the same extent that a child born of their union would inherit.' The influences of a child of tender years in the home circle are too sacred and holy to be estimated in dollars and cents. And when the mother sent her child to dwell in another family, in a distant state, she yielded much of affection and love, and Brewster, by the same act gained the companionship of one who added much, no doubt, to his enjoyment of life. The sundering of natural ties and the formation of artificial ones for the enjoyment and gratification of the party at whose instance this is done, is held, and ought to be held, to be such a consideration as the courts will recognize as valuable where the other party has in good faith acted on and carried out the agreement on his part. This is upon the principle that the parties cannot be put in statu quo. In the very nature of things, nine years in the life of a child so change conditions that

it is out of the power of an earthly tribunal to restore the parties to their original situation and environment, and the courts therefore compel them to stand upon and abide by the record they have made."

To the same effect see Winne v. Winne, 166 N.Y. 263, 59 N.E. 832, 82 Am.St.Rep. 647; Brinton v. Van Cott, 8 Utah 480, 33 P. 218.

Appellant lays much stress on the case of Campbell v. Sowell, 230 Ala. 109, 159 So. 813, 814, where this court held:

"Of course this agreement is neither binding upon appellant nor upon this court, if the child's welfare required that other disposition should be made of her. However, as pointed out in in the case of Payne v. Payne, 218 Ala. 330, 118 So. 575, such an agreement and acquiescence on the part of the father is to be carefully considered, and not to be entirely ignored, upon the whim and caprice of the parent. It is at least a circumstance to be considered, in the light of all the evidence in the case, but in no event can it determine the action of the court or stand in the way of another disposition of the child should its welfare require a change."

We do not think the Campbell case supports appellant's argument. In fact we think it supports the contrary view.

■ In the instant case the agreement was fully performed by the parent and child. Phillips, the deceased, received all that he bargained for. Although a contract by a parent to surrender the custody of a child to another in consideration of his promise to care for, rear, and educate it may not be binding when made because of the peculiar character of the duty and rights of the parent in respect to the child, and where the welfare of the child demands it,

it is binding on the other party after the parent and child have, as here, fully executed their part. Its enforcement has no element of immorality or illegality, and so far as we can see, is not violative of public policy.

■ The further question is, was Alene Frederick, the mother of Paul Frederick, the claimant, a competent witness in view of section 433, Title 7, Code 1940? We think she was.

While the mother, no doubt, had an interest in the outcome of the suit, in that it would relieve her of the financial burdens of educating her son, she had no pecuniary interest in the results as that phrase has been interpreted by our decisions. See Belcher Lbr. Co. v. Harrell, 252 Ala. 392, 41 So.2d 385; Eidson v. McDaniel, 216 Ala. 610, 114 So. 204; Oliver v. Williams, 163 Ala. 376, 50 So. 937; Manegold v. Mass. Mut. Life Ins. Co., 131 Ala. 180, 31 So. 86; Huckaba v. Abbott, 87 Ala. 409, 6 So. 48.

As stated above, there are numerous assignments of error. They relate, principally, to the admission of evidence and the giving or refusing of charges. We have carefully examined all of them and feel that they have been substantially answered above.

Affirmed.

FOSTER and STAKELY, JJ., concur.

BROWN, J., concurs especially.

BROWN, Justice (concurring especially).

I have no quarrel with the principles enunciated above, but am of the opinion that in the absence of a motion to set aside the verdict of the jury in this case the record presents nothing for this court to review. Karter v. East, 220 Ala. 511, 125 So. 655; Hill v. Cowart, 251 Ala. 260, 37 So.2d 103, and cases there cited.