# FRANK N. NICHOLS ET AL.

## vs.

# WILLIAM C. MEYER.

*Review on Appeal—Sufficiency of Exceptions—Discretion cf
Lower Court—Trespass—Exemplary Dam-
ages—Evidence.*

Where there was no objection to a question asked of a wit-
ness, nor a motion to strike it out, and no objection to the
answer thereto or to any part of it, there is no ruling of the
lower court in regard to such question and answer for the
purpose of review on appeal.                                    p. 456

That the appellee treats as valid an exception based on the
introduction of certain evidence, in connection with which no
ruling was made by the lower court, does not make the excep-
tion valid for the purpose of the appeal.                       p. 456

In the case of an objection to evidence already admitted,
part of which is admissible, the onus rests on the party mak-
ing the objection to confine it to the portion which is inad-
missible.                                                       p. 457

The admission of evidence is not cause for reversal if the
facts involved therein were subsequently testified to by the
appellants' witnesses.                                          p. 457

In an action of trespass *de bonis asportatis,* if the tortious
act was willful, reckless, wanton, malicious, or fraudulent,
exemplary damages may be recovered.                             p. 457

A charge in the declaration that the appellants "with force
and arms broke and entered the storehouse of plaintiff, and
seized and took possession of the plaintiff's chattels," is suffi-
cient to characterize the act complained of as a wanton and
willful invasion of the plaintiff's rights, so as to justify the
admission of evidence as to the financial standing of defend-
ant, as bearing on the matter of exemplary damages.

                                                          pp. 457, 458

An exception, covering a number of questions and answers, and extending over two pages of the record, some of the questions being asked by the court and some by counsel, without any specification of any particular question to which the objection was meant to relate, will not be considered. p. 451

An exception to the action of the court in permitting a certain paper to be taken into the jury room, if not made until after the return of the verdict, cannot be considered on appeal, since an exception must be taken while the jury is at the bar; and that the appellant and his counsel were absent from the court room, at the time of the action complained of, is immaterial, since they could have been present. pp. 459, 460

The action of the trial court in allowing a paper in evidence to be taken to the jury room involves an exercise of discretion not reviewable on appeal. p. 460

The action of the trial court upon a motion for a new trial involves an exercise of discretion not reviewable on appeal.

p. 460

A contention on appeal that there was no evidence to sustain a granted prayer, which allowed the jury to award punitive or exemplary damages, cannot be considered if there was no special objection thereto on that ground in the trial court. p. 460

*Decided November 17th, 1921.*

Appeal from the Baltimore City Court (DOBLER, J.).

Action by William C. Meyer against Frank N. Nichols, trading as Frank Nichols Company, and Lloyd L. Lambie. From a judgment for plaintiff, defendants appeal. Affirmed.

The following prayers of plaintiff were granted:

Second.—The plaintiff prays the court to instruct the jury that if they find from the evidence that the plaintiff conducted a pool room and merchandise business at 1601 North Gilmor Street as testified to, and that he was the owner of the fixtures and equipment in said store, and if they further find that the defendants, or either of them, without authority

from the plaintiff, took possession of said fixtures and business, then their verdict shall be for the plaintiff, as against such defendant or defendants, as the jury shall find deprived the plaintiff of his property.

Third.—The plaintiff prays the court to instruct the jury that if they find the witness, Hoy, secured or aided in securing possession of the business and property of the plaintiff, without any authority from the plaintiff, and if they further find that in so doing he acted as the agent of the defendant, Nichols, or by his authority or instructions, or if they find that the defendant, Nichols, with full knowldege of the facts, subsequently accepted the benefits of the acts of the said Hoy, and acknowledged them as his own acts to the plaintiff, if the jury shall so find, then the defendant, Nichols, is responsible in law for the acts of said Hoy.

Fourth.—The plaintiff prays the court to instruct the jury that if they find for the plaintiff they may award him as damages the value of such of his property as they may find was taken by the defendants with interest in the discretion of the jury; and if they further find that said goods were taken in a wanton and malicious manner, in disregard of the rights of the plaintiff, then they may award the plaintiff such further damages as under all the facts and circumstances of this case they may think proper to punish such conduct and deter the defendants and others from like conduct in the future.

Fifth.—The plaintiff prays the court to instruct the jury that even though the defendants acted in good faith, and without malice, this constitutes no excuse or justification in law for taking possession of the plaintiffs' goods, and if the jury shall find that the defendants did take possession of the plaintiff's goods, then their verdict shall be for the plaintiff for the value of said goods irrespective of their motive or intention in taking them.

The cause was argued before BOYD., C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*J. Abner Sayler,* for the appellants.

*George S. Yost,* with whom was *Stephen P. Campbell* on
the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Baltimore City
Court in favor of the appellee in an action of trespass *de bonis
asportatis* brought by him against the appellants.

The facts which are material to the inquiry before us may
be thus summarized:

William C. Meyer, on March 9th, 1917, opened a small
cigar store at 1601 N. Gilmor Street, in the City of Balti-
more, where he sold cigars, candy and school supplies, and in
connection with that business operated a public pool table.
This store which he rented was furnished with the equipment
and supplies usually found in a place of its size and char-
acter. In November, 1918, having been drafted in the army,
he employed his brother, Raymond Meyer, and a certain John
Wall to run the place until his return. They continued to
carry it on in his absence, until they were deprived of its
possession under circumstances referred to below, although,
because Raymond Meyer was a minor, the licenses for the
place were in the name of Frank Meyer, an older brother.
When William C. Meyer left, he owed Frank N. Nichols, a
tobacconist, a balance of $41.96 for tobacco, cigars and cigar-
ettes. That balance was increased by purchases during his
absence, until on February 12th, 1919, it amounted to $66.09.
The testimony of the appellants is that these purchases were
made by Mrs. Meyer, while that of the appellee is that they
were made by Wall and Raymond Meyer. At that time
Thomas H. Hoy, a salesman for Nichols, went to Mrs. Annie
Meyer, the mother of the appellee, with Lloyd L. Lambie, in
reference to this indebtedness. Mrs. Meyer, who was then
about 63 years of age, was a janitress in one of the city
schools and was partially dependent upon the appellee for

her support. She was unable to read or write and, on the occasion of her interview with Hoy and Lambie, was just recovering "from a spell of sickness." The testimony as to what took place at that interview is conflicting. Mrs. Meyer said she told them she did not have any money, but she thought she would be able, with the appellee's assistance, to pay the bill later, and that then "they stood there for a while and said 'we will take the place over.'" That they went out and came back and told her "they took over all that stuff for the bill." That they gave her a paper to sign, and that, although she did not know what it was, she put her mark on it. Hoy's version of what occurred can be best understood by quoting a part of his testimony, in which he said: "I walked into Mrs. Meyer's house—she knew who I was and knew Lambie. I said, 'Mrs. Meyer, I would like to know what you are going to do about the place?' Well, she was all excited, and she said, 'I don't know. I would like to pay you that money, but I have not got one cent.' I said, 'I understand they are going to close the place up, and you certainly ought to have notified us. If you are going to sell it you ought to notify us who you are going to sell it to,' and she said, 'I don't know anything about it; the way that place is being run I am not getting a cent of money, and it is setting me crazy,' and she went on crying and said we have to sell the place. I said, 'Mr. Lambie, here, he is willing to buy the place of you,' and she said, 'Mr. Hoy, you do anything you want, just so you pay that bill and clear my boy's name, Willie,' and started crying, 'just so you clear his name; he was a good boy; do anything to clear his name.' I said, 'of course, the place don't belong to me, and I am only here to see what he will do,' and then he suggested—I asked him then how much he would give, and he said $50. I turned to Mrs. Meyer and said, 'You realize the fact you owe the firm $66.09. Now, if you sell the place I expect you to pay us the bill, and $50 is not going to pay the bill.' She said, 'No, that is true, but with the help of God, I will pay you the balance of your

money some day.' I said, 'That is very nice of you to do that, and we will see what we can do in this matter,' and she said, 'Mr. Hoy, as I told you, do anything you want, anything you wish; you go ahead and do it.' I said, 'Mrs. Meyer, I don't want to do anything that is not agreeable to you.' I said, 'Here is the case: This young man will take the place over and will give you $50, and will go further and give $5 for the use of the license. Now, if you want to you can let him pay us that money and credit your account with the $55 and leave a balance of $11.09.' She said, 'anything whatever you wish.' There was no paper drawn up, no paper put in evidence of any kind that night; that was all that was said or done." After that Lambie testified that he paid the $55 to Nichols' bookkeeper and took possession of the appellee's place, with its fixtures and supplies, and continued to operate it until William C. Meyer was discharged from the army and returned to his home. Meyer, who then learned for the first time of what had been done, went to Nichols' place of business and inquired for him, and he asked the person who came in response to that inquiry "why they took" his place, and was informed that "they used the fixtures for payment of the bill and there was not enough in the store to pay the bill and I still owed them eleven dollars and some cents." He also went to Lambie, but failing to receive what he regarded as a satisfactory answer to his complaint, he brought this action. There is also testimony tending to show that Nichols knew that Hoy took over the appellee's property in part payment of his, Nichols', claim, and that he received the proceeds of the sale.

The record contains five exceptions, of which three relate to questions of evidence, one to the court's action in permitting a receipt offered in evidence to be taken into the jury room whilst the jury was deliberating over its verdict, and one to the court's action on the prayers. These exceptions we will consider in the order in which we have named them.

The first exception is in the following form: "Counsel for the defendant then asked the witness as follows: 'Will you tell us, Mr. Meyer, as nearly as possible, what equipment you had in that business?' and the witness thereupon said, 'I bought this pool table for $85 and went to the Brunswick-Balke-Collender Company, in which they allowed me $50, and I bought a new one and paid them $350.' And thereupon Mr. Broening, counsel for Mr. Lambie, one of the defendants, objected to the ruling of the court permitting the witness to speak of this pool table, and duly excepted to the said ruling. While it speaks of a "ruling" of the court, the record does not show that there was anything before the court upon which it could rule. There was no objection to the question nor was there any motion to strike out, or objection to the answer or any part of it. Since, therefore, there is no ruling before us to review, we cannot consider this exception. *Cumberland Mfg. Co.* v. *Dewitt,* 120 Md. 390. Nor can the fact that the appellee treats it in his brief as a valid exception affect our conclusion, since no agreement could supply a ruling of the court where none was made.

The appellee, having testified that after his return he had gone to Nichols' place of business and inquired for him, and that when someone came out in response to that inquiry Meyer asked him "why they took" his place, was then asked "where was this" and replied: "In Mr. Frank Nichols' Tobacco Company, on Hanover Street, and I asked for Mr. Frank Nichols, and when this man came from the counter I asked him why he took my store, 1601 North Gilmor Street, and he said they used the fixtures for payment of the bill, and there was not enough in the store to pay the bill and I still owed them eleven dollars and some cents." Counsel for one of the appellants then "objected to the last answer given and the court instructed the witness to proceed with his answer," to which ruling the second exception was taken. The witness then said, that after he went to the place of business of Mr. Nichols and asked some man for Mr. Nichols, a man appeared

from the office whose appearance he could not describe, and he did not know whether this man was Mr. Nichols." The objection was to the entire answer, a part of which was clearly admissible, and even if it is treated as equivalent to a motion to strike out the answer, there was no error in overruling it, since, in an objection to evidence already admitted, part of which is admissible, the "onus rests upon the party making the application to confine his objection to that portion of the evidence which is illegal." *Carroll* v. *Granite Mfg. Co.,* 11 Md. 399; *Jessup* v. *State,* 117 Md. 122. But aside from that, the appellants could not have been injured by the admission of that part of the answer which would, upon proper objection, have been excluded, because Meyer in testifying that the person, who answered his inquiry for Nichols, said that they had used the fixtures to pay the bill, and that there was not enough in the store to pay it and that he, Meyer, still owed eleven dollars and some cents, referred to no facts which were not afterwards sworn to by the appellants' witnesses.

Counsel in their briefs treat the third exception as an objection to the admissibility of testimony relating to the financial standing of Frank N. Nichols, one of the appellants. Assuming for the moment that it does validly present that question, we find no error in the ruling complained of. In actions of this character, where the wrongful act was wilful, reckless, wanton, malicious or fraudulent, exemplary damages may be allowed (38 *Cyc.* 1142), and where, in such a case, the declaration charges that the tortious act was done under such circumstances, such evidence may be admitted for the purpose of informing the jury of the defendants' influence and station in life, since in a proper case for the allowance of such damages they could consider those elements. *Sloan* v. *Edwards,* 61 Md. 100; *Wilms* v. *White,* 26 Md. 388; *Groh* v. *South,* 121 Md. 640.

In this case the declaration charged that the appellants "with force and arms broke and entered the store house of the plaintiff * * * and seized and took possession of the goods and

chattels of the said plaintiff." This was sufficient to characterize the act complained of as a wanton and wilful invasion of the plaintiff's rights, and brings the case within the rule stated in *Groh* v. *South,* 121 Md. 641, in which JUDGE STOCKBRIDGE, speaking for the Court, said: "The first and second exceptions relate to the admission of evidence tending to show the pecuniary worth of the defendant. The declaration had charged that the acts complained of were done 'intending to injure the plaintiff in the beneficial use and occupation of said farm and of the waters of the aforesaid spring.' This was in effect an allegation of malice, and whenever that is an element of an alleged wrongful act, exemplary damages may be asked, and the jury are entitled for such a purpose to know the means of the defendant." An examination of *Heinekamp* v. *Beatty,* 74 Md. 388, fails to disclose anything in conflict with these views. That case was an action of trover, and, because it was an action of trover and was not an action of trespass, the Court decided that punitive or vindictive damages could not be allowed.

While we have assumed in passing that this is a valid exception, it is in fact too vague and indefinite to present any questions for the consideration of this Court. It covers a number of questions and answers extending over at least two pages of the record, some of which were asked by the court, and some by counsel, without specifying any particular question or answer to which the objection was meant to relate. This practice has been repeatedly condemned by this Court (*Stokes* v. *Wolf,* 137 Md. 407), and under the rule stated in that and earlier cases an exception presented in such a form will not be considered.

During the trial of the case a receipt given by the "Frank Nichols Company per Hoy" to Lambie for fifty-five dollars for "stock and fixtures of 1601 North Gilmor Street from William Meyer" was offered in evidence. After the jury had retired for deliberation, and before they brought in their verdict, they asked to see this receipt and the court, without con-

sulting Nichols or his attorney, permitted the paper to be
taken into the jury room. "As soon as Nichols and his attor-
ney learned of this, they filed a petition in court excepting to
the same and requested the court to grant a new trial" on that
ground. The exception then states that "the court, after hear-
ing argument of this question, refused to do so and exception
was duly noted for Mr. Nichols by his attorney." This is the
fifth, called in the record the "sixth" exception. It nowhere
appears when Mr. Nichols or his attorney first heard of the
court's action, or when they first objected to it, except that it
was not until after the day on which the verdict was returned.
Under such circumstances we must consider the exception as
relating to the court's *refusal to allow a new trial* because of
the introduction of this paper into the jury room, since it can-
not refer to the court's action in permitting the paper to be
taken into the jury room, because no objection was made or
exception noted to that action while the jury was at the bar.
Discussing a similar question, this Court said, in *Balto. Bldg.*
*Assoc.* v. *Grant,* 41 Md. 560: "In *Phelps* v. *Mayer,* 15
How. 160, which came up on writ of error, for the purpose
of reviewing the ruling of the court below in granting certain
instructions and refusing others, it appeared that '*no excep-*
*tion was taken to them while the jury remained at the bar.*
The verdict was rendered on the 13th of December, and the
next day the plaintiff came into court and filed his exception.
There was nothing in the certificate from which it could be
inferred that the exception was reserved pending the trial and
before the jury retired.' Objection was made that the excep-
tion was too late, and the Court held that the objection was
fatal.

"CHIEF JUSTICE TANEY, speaking for the Court, said it
has been repeatedly decided 'that it must appear by the tran-
script, not only that the instructions were given or refused at
the trial, but also that the party who complains of them ex-
cepted to them while the jury were at the bar. The *Statute*
*of Westminster II,* which provides for the proceeding by ex-

ception requires, in explicit terms, that this should be done; and if it is not done, the charge of the court or its refusal to charge as requested, form no part of the record, and cannot be carried before the appellate court by writ of error. It need not be drawn out in form and signed before the jury retire; but it must be taken in open court, and must appear by the certificate of the judge who authenticates it, to have been so taken."

Nor is the application of this rule affected by the consideration that the appellant and his counsel were absent from the court room when the court acted on the jury's request, inasmuch as they could have been present had they so elected. We will therefore treat the exception as relating to the court's action in overruling the motion for a new trial. But whether it applies to the one or the other the exception could not be entertained by this Court, because the action of the trial court in either case involved an exercise of discretion which will not be reviewed here. *Cahill* v. *Baltimore,* 129 Md. 26; *Myers* v. *State,* 137 Md. 486; *Miller* v. *State,* 135 Md. 379; *Archer* v. *State,* 45 Md. 460.

The court granted four prayers at the instance of the plaintiff, and the defendants' second and sixth prayers, and modified and granted the seventh prayer and refused their first, third, fourth and fifth prayers. No particular objection was urged in this Court to the plaintiff's second, third and fifth prayers, which are substantially correct statements of the legal principles upon which the plaintiff relied, and we find no error in the court's rulings in regard to them. The appellants however **very** earnestly contend that the plaintiff's fourth prayer, which allowed the jury to award punitive or exemplary damages, should not have been granted, because there was "no evidence to sustain it." Whether that was true or not we are not at liberty to consider, because no special objection to it was made on that ground in the trial court. *Bagby's Code, Pub. Gen. Laws,* art. 5, sec. 9, and cases collected in the annotation thereto.

The legal principles stated in the prayer are generally approved and have been repeatedly sanctioned by this Court, and indeed are not questioned by the appellants, and there was no error in the court's ruling as to it.

Since the appellants in their brief do not press their exception relating to their rejected prayers, it is sufficient to say that we have found no error in the rulings as to them.

Finding no error in the rulings of the trial court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*