# SMITH, Adm'r et al. *v.* GRAY CONCRETE PIPE COMPANY, INC. et al.

[Misc. No. 1, September Term, 1972.]

*Decided December 4, 1972.*

150

*Motion for rehearing filed January 3, 1973; denied January 8, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH and LEVINE, JJ.

*George W. Shadoan,* with whom were *Shadoan & Mack* on the brief, for plaintiffs.

*Kevin J. McCarthy,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for defendants.

LEVINE, J., delivered the opinion of the Court. SMITH, J., dissents and filed a dissenting opinion at page 172 *infra.*

We are presented here with the first case to reach this Court pursuant to the "Uniform Certification of Questions of Law Act," enacted by the General Assembly as Ch. 427, Laws of Maryland, 1972, since codified as Code

(1957, 1960 Repl. Vol., 1972 Supp.) Art. 26, § 161-172. Section 161 provides:

"The [C]ourt of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or a United States District Court when requested by the certifying court if there is involved in any proceeding before it a question of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Court of Appeals of this State."

The question upon which our opinion is sought here comes to us from the United States District Court for the Eastern District of Virginia with a record consisting of a complaint for damages arising out of a motor vehicle collision occurring in Maryland, and a motion to dismiss the complaint.

In brief, the complaint alleges that an accident occurred on July 19, 1970, in Prince George's County, in which Adolphus Gilliam Bradshaw, III, a minor, was killed. The complaint contains four causes of action: Count one is a claim for compensatory damages by the decedent's parents based on wrongful death. Code (1957, 1970 Repl. Vol.) Art. 67, § 1. The legal theory on which count one rests is negligent entrustment against the corporate defendant which was the owner of the truck involved in the collision with the decedent.

Count two, which likewise seeks compensatory damages for wrongful death, due to negligent operation, is directed at both defendants, the corporate owner of the truck and the operator, and, as against the former, is based upon *respondeat superior*.

Count three is a survival action, Code (1957, 1969 Repl. Vol.) Art. 75, §§ 15A, 15B, and Art. 93, § 7-401 (n), brought by the administrator of the decedent's estate

against the corporate defendant for negligent entrustment, but, in addition to compensatory damages, seeks punitive or exemplary damages.

Count four, also a survival action brought by the administrator, seeks compensatory and exemplary damages, but, in alleging negligent operation and *respondeat superior*, is patterned on count two. As will later be seen, we are concerned here with counts three and four which incorporate by reference the substantive tort allegations of counts one and two, respectively.

Defendants responded to the complaint by filing a motion to dismiss counts three and four "since punitive damages are not allowed by law in cases involving automobile accidents such as this and because this point has previously been decided by the Circuit Court for Prince George's County, Maryland from which decision no appeal was taken." Although the motion is silent in this regard, we shall treat it as one filed pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure, for "failure to state a claim upon which relief can be granted." It is the motion to dismiss that led directly to the order of certification.[1]

We are confronted with three threshold questions which defendants contend must be resolved favorably to plain-

---

1.    "ORDER OF CERTIFICATION

"Upon consideration of Plaintiffs' Motion to Certify Question of Law to the Maryland Court of Appeals, and it appearing that the question as to whether the Plaintiffs have stated a claim upon which punitive damages can be granted is a substantial matter within the case and one upon which there is no controlling precedent in the decisions of the Court of Appeals of Maryland, it is, by the United States District Court for the Eastern District of Virginia (Alexandria Division), this 10th day of July, 1972,

"ORDERED, That the below question and statement of facts relevant to the question certified be forwarded by the Clerk of the Court under official seal to the Court of Appeals of Maryland. *"Question Certified:*

*"Does the Complaint attached hereto, and by this reference made a part hereof, state a claim upon which punitive damages may be awarded pursuant to Maryland Law?* (emphasis added)

"Facts Relevant to Question Certified:

"Plaintiffs have filed the Complaint attached hereto and Defendants have filed a Motion to Dismiss alleging that Maryland Law does not allow an award for punitive damages even if Plaintiffs prove each of the facts alleged in the Complaint."

tiff before we may reach the question which has been certified to us.

Those questions are:

(1) Does this Court have jurisdiction to hear an action involving injury resulting from the operation of a motor vehicle or motor vehicles which has not been first presented to the Court of Special Appeals?

(2) Is the decision of the Circuit Court for Prince George's County that punitive damages may not be allowed, binding on any other court in which this case might be filed?

(3) Can an administrator recover punitive damages because of an automobile accident?

# I

In contending that this Court has no jurisdiction to hear a case involving an injury arising from the operation of a motor vehicle which has not been presented to the Court of Special Appeals, defendants rely exclusively upon Code (1957, 1968 Repl. Vol.) Art. 5, § 5A (16) and § 21. Those provisions govern the categories over which the Court of Special Appeals has initial appellate jurisdiction, and the granting of *certiorari* by both appellate courts.[2]

In effect, defendants argue that since this is a tort action, we may not consider the case, our jurisdiction in this sector being limited to those cases in which we have granted *certiorari*. We disagree.

First, with due respect for the Court of Special Appeals, it is clear from the language of Art. 26, § 161 that the Uniform Act which has brought this case here contemplates a decision by the highest tribunal of a state in which there is lacking the controlling precedent sought

---

2. Defendants, in relying upon § 5A (16), have assumed that the initial appellate jurisdiction of the Court of Special Appeals in tort cases remains confined to those arising out of motor vehicle operation, whereas, by Ch. 361, Laws of 1972, Subsection (16) was amended to embrace within such jurisdiction virtually all *ex delicto* actions. That amendment, of course, is of no materiality to this case.

by the certifying court. This view is not attenuated by the fact that this Court has jurisdiction over (motor) tort cases by certiorari only. What defendants overlook in this regard is that the jurisdiction conferred by Art. 26, § 161 is extrinsic to the framework of our traditional appellate function set forth in Art. 5 of the Code.

Secondly, in enacting § 161 *et seq.*, the Legislature is presumed to have been cognizant of the jurisdiction of this Court, as delineated in Art. 5, § 5A (16). Since the two statutory provisions are neither irreconcilable nor mutually repugnant, they should be construed in harmony with their respective objects and tenor, *Public Service Commission v. Maryland Bay Co.*, 176 Md. 59, 3 A. 2d 736 (1939) ; *Blades v. Szatai*, 151 Md. 644, 135 A. 841 (1927). This rule is especially applicable where, as here, we deal with two statutes relating to the same subject matter, *Prince George's Co. v. McBride*, 263 Md. 235, 282 A. 2d 486 (1971) ; *May v. Warnick*, 227 Md. 77, 175 A. 2d 413 (1961) ; *Balto. Credit Union v. Thorne*, 214 Md. 200, 134 A. 2d 84 (1957) ; *Welsh v. Kuntz*, 196 Md. 86, 75 A. 2d 343 (1950), viz., the jurisdiction of this Court.

In short, we see the Legislature as having fully intended that this Court should determine all open questions certified under Art. 26, § 161 without regard to whether such questions pertain to substantive matters in which we no longer happen to retain initial appellate jurisdiction.

## II

Prior to bringing this action in the federal court, plaintiffs had filed the same cause of action in the Circuit Court for Montgomery County, Maryland, from which it was removed by agreement, after a dispute over venue, to the Circuit Court for Prince George's County. There it came on for hearing before Judge Ralph W. Powers on defendants' demurrer which, as with the motion to dismiss which attacks the complaint here, challenged in part the sufficiency of plaintiffs' amended declaration.

The demurrer to those counts which prayed exemplary damages was sustained without leave to amend, Judge Powers having, in effect, ruled that such damages could not be recovered in the absence of an intentional tort and that plaintiffs had not alleged facts showing conduct " 'of such an extraordinary character as possibly to be the legal equivalent of intentional or actual malice,' " citing *Conklin v. Schillinger, infra.*

Defendants argue here that Judge Powers' decision regarding exemplary damages is binding upon plaintiffs who, they say, waived further consideration of the same question by the courts of this state when they failed to preserve the point for ultimate determination through the appellate route. Although they do not *eo nomine* assert *res judicata,* this is evidently the issue they seek to raise.

We entertain considerable doubt that this question is properly before us since, as plaintiffs observe, the circuit court proceedings are neither a part of the record forwarded to this Court by the federal court; nor is this issue within the ambit of the certification, our role being confined to the determination of questions upon which "there is no controlling precedent in the decisions" of this Court. In any event, we shall assume arguendo for purposes of this opinion that the issue is one which we must reach here. In so doing, however, we intimate no approval of the inclusion of matters in the record extract and brief which are not contained in the record itself.

What defendants overlook in contending that plaintiffs are barred due to Judge Powers' decision, is that after the demurrer was sustained, but before the entry of a final judgment, plaintiffs took a voluntary nonsuit in the circuit court. It is fundamental to the application of the doctrine of *res judicata* that there must previously have been a final adjudication. *Badders v. Uhler,* 233 Md. 441, 197 A. 2d 120, *cert. denied* 377 U. S. 958 (1964); *Queen City v. Independent,* 230 Md. 387, 187 A. 2d 459 (1963); *Surrey Inn, Inc. v. Jennings,* 215 Md. 446, 138

A. 2d 658 (1958). In noting that an order sustaining a demurrer is not a final judgment, Chief Judge Brune, speaking for the Court in *Surrey Inn, supra,* quoted with approval from *State, Use of Staylor v. Jenkins,* 70 Md. 472, 17 A. 392 (1889), where the precise argument pressed before this Court by defendants was raised and decided in plaintiffs' favor:

> " 'According to the prevailing practice in this State, the entry of demurrer sustained, is but the announcement of the opinion of the Court upon the question raised by it; and until formal entry of judgment thereon, the case remains open for amendment or trial of other issues which may be in the case. (citations omitted) The entry of 'demurrer sustained' was not a judgment upon which execution for costs could go; or on which an appeal could have been taken. It did not authorize the extension of the judgment by the clerk as he has it in the exemplification record in evidence; and, therefore, did not possess those elements of a *final judgment* to make the decision on the demurrer in that case conclusive in any future litigation between the parties.' " 215 Md. at 455-56 (emphasis in original).

In 2 *Freeman on Judgments,* § 748, in which *State, Use of Staylor v. Jenkins, supra,* is cited, it is aptly stated:

> "A judgment or decree of dismissal after demurrer sustained because the plaintiff's pleading does not state a cause of action does not bar a new action on sufficient pleadings. Thus where the plaintiff, after a decision sustaining a demurrer to his petition or complaint, whether or not leave to amend is given, does not stand upon his pleading but prevents the case from going to a final judgment by voluntarily dismissing or discontinuing it, he is not barred

> from bringing a new action since the judgment
> is not on the merits but is a mere dismissal."

Furthermore, it appears that plaintiffs' amended declaration contained five counts, of which merely three were the subject of Judge Powers' ruling, thereby leaving the remaining two unaffected by his decision. Thus, without the "express determination that there [was] no just reason for delay [nor without] an express direction for the entry of judgment" required by Rule 605 a, Judge Powers' ruling does not suffice to invoke the doctrine of *res judicata*. *Parish v. Milk Producers Ass'n,* 250 Md. 24, 96-98, 242 A. 2d 512 (1968).

### III

Without calling our attention to any authority which directly supports their position, defendants argue that the claims for punitive damages must fall because an administrator cannot recover exemplary damages. Since a survival action is a creature of statute, they maintain that such damages should not be allowed, absent an express provision therefor in the statute. They also point to the denial of exemplary damages in the parallel wrongful death action, *Baltimore & Ohio R.R. Co. v. Kelly,* 24 Md. 271 (1866), as authority for their position, claiming, in effect, that plaintiff seeks indirectly what even he concedes he cannot obtain directly. We find no merit in either argument.

The early history of Maryland's Wrongful Death Statute, the Survival Statute and the statute permitting a personal representative to recover those damages which his decedent might have recovered was carefully traced by our predecessors in *Stewart v. United Electric Light and Power Co.,* 104 Md. 332, 65 A. 49 (1906). There, the differences between a wrongful death action and one brought by a personal representative were sharply defined, and no useful purpose would be served by a review here. It seems clear to us that the rationale for precluding exemplary damages in wrongful death ac-

tions—that the statute creating the cause of action limits the recoverable damages—has no application to an action brought by the personal representative, which is not a new cause of action at all, but one which the decedent could have maintained in the event he had lived. *Stewart, supra.*

While this Court has not previously been called upon to decide this question, courts elsewhere have uniformly rejected the contention made by defendants, and have held that a personal representative may recover exemplary damages under statutes similar in language to that relied upon here by plaintiffs. In *Reynolds v. Willis*, 209 A. 2d 760 (Del. 1965), a case where a claim similar to that which is made here was brought under a statute resembling our own, the Supreme Court of Delaware upheld a recovery of exemplary damages.

In allowing exemplary damages under the Pennsylvania Survival Statute, the court in *Hennigan v. Atlantic Refining Co.*, 282 F. Supp. 667 (E.D. Pa.), aff'd 400 F. 2d 857 (1967), aptly stated:

> "Furthermore, since the function of punitive damages is to punish outrageous conduct and to discourage similar conduct in the future, *Restatement, Torts,* § 908, Comment (a) (1939), it would appear to be inconsistent to disallow such an award where the conduct of the defendant is not only reprehensible but in fact results in death." 282 F. Supp. at 683.

The same view, slightly paraphrased, appears in *Leahy v. Morgan*, 275 F. Supp. 424, 425 (E.D. Iowa 1967), where the court said:

> "The public policy underlying exemplary damages is to punish the wrongdoer. Logic dictates that if a wrongdoer may be punished if his victim lives, then surely he should not escape retribution if his wrongful act causes a death."

The same reasoning was applied in upholding recovery

of exemplary damages under the Florida Survival Statute, *Atlas Properties, Inc. v. Didich,* 226 So. 2d 684 (Fla. 1969). *Kern v. Kogan,* 226 A. 2d 186 (N.J. Super. Ct., 1967) and *Worrie v. Boze,* 96 S.E.2d 799 (Va. 1957) are to like effect.

We find the rationale of these authorities unassailable, and agree with the logic "that if a wrongdoer may be punished if his victim lives, then surely he should not escape retribution if his wrongful act causes a death." *Leahy v. Morgan, supra.* Thus, we hold that a personal representative may recover exemplary damages in those cases where they might have been awarded to the decedent, whose estate he administers, had the former survived.

## IV

Although this case has been certified to us for the reason "that the question as to whether the plaintiffs have stated a claim upon which punitive damages can be granted is a substantial matter within the case and one upon which there is no controlling precedent in the decisions" of this Court, there have been two Maryland cases which have touched upon the subject of exemplary damages in suits arising out of motor vehicle operation: *Conklin v. Schillinger,* 255 Md. 50, 257 A. 2d 187 (1969) and *Davis v. Gordon,* 183 Md. 129, 36 A. 2d 699 (1944).

In *Davis,* where there was an appeal from a judgment against a motor vehicle operator, a question was raised concerning jury instructions which allowed for exemplary damages. In reversing, this Court held that it was error for the trial court to give those instructions. We said there, in quoting from the decision of our predecessors in *Philadelphia, W. & B. R.R. Co. v. Hoeflich,* 62 Md. 300, 307, 50 Am. Rep. 223 (1884) :

> " '[T]o entitle one to [exemplary] damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act.' " 183 Md. at 133.

In *Conklin, supra,* where the trial judge ruled that punitive damages could not be recovered, the argument was advanced in this Court that *Davis,* if properly interpreted and reconciled with other decisions of this Court, did not preclude exemplary damages. It was also contended that *Davis* did "not hold that punitive damages may be recoverable only if the defendant intentionally injures a victim with his automobile, but instead allows punitive damages when an automobile driver causes injury by his intentional disregard of his duty of due care for the safety of others." 255 Md. at 71.

For reasons not here relevant, we held in *Conklin* that the issue of exemplary damages was not properly preserved for appellate review, and, in any event that, had the issue been properly before us, "there were not sufficient facts in the . . . case which would have justified the trial court in submitting the issue of punitive damages to the jury." 255 Md. at 76. However, Judge Barnes, speaking for the Court, said:

> "We think it is clear that none of the decisions in this Court has held that in *no conceivable set of facts* there may not be a recovery of punitive damages in a tort case seeking damages for personal injuries resulting from the use of automobiles, and the opinion in *Davis* suggests that there may be recovery of punitive damages in the event of an intentional, malicious injury in automobile cases. The difficulty in the Maryland cases arises in regard to factual situations in which there is no evidence of *actual intent* to injure or of *actual malice* toward the injured person, but in which the defendant's conduct is of such an extraordinary character as possibly to be the legal equivalent of such actual intent or actual malice, sometimes described as 'wanton,' 'reckless disregard of the rights of others,' and the like. We rather agree that in this latter type of situation, the language of some of the Maryland cases needs further interpretation and

possible reconsideration to reach a more clear-cut rule, but unfortunately the present case is not one in which we can accomplish this desirable result[.]" 255 Md. at 71 (emphasis in original).

We see in the present case the occasion for such further interpretation that was lacking in *Conklin*.

While we have not heretofore approved an award of exemplary damages in motor vehicle cases, such damages have been allowed in this state in a variety of tort cases. Some of those cases are: *Summit Loans, Inc. v. Pecola*, 265 Md. 43, 288 A. 2d 114 (1972) (invasion of privacy); *Drug Fair v. Smith*, 263 Md. 341, 283 A. 2d 392 (1971) (assault and battery, false imprisonment and malicious prosecution); *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 261 A. 2d 731 (1970) (assault and battery, slander and false imprisonment); *Vancherie v. Siperly*, 243 Md. 366, 221 A. 2d 356 (1966) (assault and battery); *Fennell v. G.A.C. Finance Corp.*, 242 Md. 209, 218 A. 2d 492 (1966) (libel); *McClung-Logan v. Thomas*, 266 Md. 136, 172 A. 2d 494 (1961) (trover and conversion); *Nichols v. Meyer*, 139 Md. 450, 115 A. 786 (1921) (trespass *de bonis asportatis*).

Concerning the allowance of exemplary damages in motor vehicle cases, what may be regarded as "the general rule" is succinctly stated in 61A C.J.S. *Motor Vehicles* § 560:

"In general, exemplary damages may not be recovered in a case involving an ordinary collision caused by negligence on a highway, in the absence of any intentional, malicious, willful, or wanton act. In proper cases, however, punitive damages may be allowed as a means of enforcing the rules governing the use of the highways by the drivers of motor vehicles, and *such damages have been permitted for recklessness, wantonness, or willfulness* on the part of the oper-

ator of a motor vehicle, and *also for gross negligence."* (emphasis added)

Similarly, in 22 Am.Jur.2d, *Damages,* § 244, it is stated that:

"It is well established that if, while operating a motor vehicle, the defendant's misconduct, which proximately caused personal injury or death, was sufficiently offensive, an award of exemplary or punitive damages may be sustained. While there may be some theoretical differences between the tests applied to determine whether the defendant's misconduct was sufficiently offensive, all of the tests convey the general idea that *exemplary damages may be awarded where the defendant's misconduct is so flagrant as to transcend simple negligence and be tantamount to positive or affirmative misconduct rather than passive or negative misconduct.* In characterizing the requisite positive misconduct which will support a claim for punitive damages, *the courts have used such descriptive terms as wilful, wanton, grossly negligent, reckless, or malicious, either alone or in combination."* (emphasis added)

Applying one or more of the tests enumerated above, exemplary damages arising out of motor vehicle operation have been approved in numerous cases decided in a significant number of the states since the seminal case of *Buford v. Hopewell,* 140 Ky. 666, 131 S. W. 502 (1910).[3] The numerous decisions dealing with this is-

---

3. While the circumstances of the cases and tests used may vary, our search indicates there are at least 23 states which have allowed the award of punitive damages for misconduct arising out of the negligent use of an automobile:

Alabama: *W. E. Belcher Lumber Co. v. Harrell,* 252 Ala. 392, 41 So. 2d 385 (1949) (wantonness) (driving truck on dirt road at excessive speed around curve);

Arizona: *Arnold v. Frigid Food Express Co.,* 9 Ariz. App. 472, 453 P. 2d 983 (1969) (negligent conduct beyond the range of ordinary negligence) (driv-

sue, a complete listing of which would belabor this opinion, leave no doubt that, in the proper case, the allowance

---

ing tractor-trailer rig at an excessive speed in a dust storm);

Arkansas: *Holmes v. Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961) (wanton disregard of rights and safety of others) (rear end collision while intoxicated);

Connecticut: *Infeld v. Sullivan*, 151 Conn. 506, 199 A. 2d 693 (1964) (wanton misconduct) (drunken driving, speeding and not stopping after collision);

Delaware: *Sheats v. Bowen*, 318 F. Supp. 640 (D.C. Del. 1970) (maliciously or wantonly or recklessly done in disregard for the rights of others) (elderly man insisted his driver continue on although latter exhausted from driving all day);

Florida: *Busser v. Sabatasso*, 143 So. 2d 532 (Fla. App. 1962) (a high degree of negligence) (rear end collision after drinking and using medication);

Georgia: *Jackson v. Co-op Cab Company, infra* (wilful misconduct, malice, fraud, oppression, or entire want of care evidencing conscious indifference to consequences) (company's negligently extrusting taxi to driver with background of dizziness and blackouts);

Illinois: *Madison v. Wigal*, 18 Ill. App. 2d 564, 153 N.E.2d 90 (1958) (malice, violence, oppression or wilful and wanton misconduct) (driving car while intoxicated into wrong lane of four-lane highway);

Iowa: *Sebastian v. Wood*, 246 Iowa 94, 66 N.W.2d 841 (1954) (malice, oppression, wantonness, recklessness, or gross negligence) (colliding with car while on wrong side of road and intoxicated);

Kansas: *Knoblock v. Morris*, 169 Kan. 540, 220 P. 2d 171 (1950) (wilful and wanton negligence, and disregard of the lives or safety of others) (approaching intersection at 30-35 m.p.h. and not stopping for stop sign);

Kentucky: *Smith v. King*, 239 S.W.2d 955 (Ky. App. 1951) (gross negligence brought about by wanton or reckless disregard of the safety of plaintiff's person) (truck driver striking and killing 6-year-old child after first seeing him alongside roadway, but not paying proper attention);

Mississippi: *Dame v. Estes*, 233 Miss. 315, 101 So. 2d 644 (1958) (such gross and reckless negligence as is, in the eyes of the law, the equivalent of wilful wrong) (speeding through intersection and ignoring or failing to see stop sign);

Missouri: *Ohio Casualty Ins. Co. v. Welfare Finance Co.*, 75 F. 2d 58, *cert. denied*, 295 U. S. 734 (8th Cir. 1934) (wanton and reckless in character) (driving truck out of garage while plaintiff on running board and not leaving enough clearance);

Montana: *Cherry-Burrell Co. v. Thatcher*, 107 F. 2d 65 (9th Cir. 1939) (oppression, fraud, or malice,

of exemplary damages in motor vehicle cases in this country is part of an increasing trend that is merely gaining in momentum.

The problem which emerges from a survey of the decisions, as we recognized in *Conklin, supra,* is in fashioning a test which does not depart from our prior decisions, but which recognizes that there may be "factual situations in which there is no evidence of *actual intent*

|   |   |
|---|---|
| | actual or presumed) (passing and sideswiping car during snowstorm, then trying to flee); |
| New Jersey: | *Haucke v. Beckman,* 96 N.J.L. 409, 115 A. 653 (1921) (wanton and reckless disregard of the plaintiff's rights as to stamp conduct as wilful and intentional) (pedestrian hit by car speeding around curve and not stopping to offer aid); |
| New York: | *Soucy v. Greyhound Corporation, infra* (flagrant misconduct; committed recklessly or wantonly, i.e., without regard to the rights of the plaintiff, or of people in general) (negligent entrustment of bus with over 600,000 miles, worn-out tires, defective windshield wiper and faulty gearshift); |
| North Carolina: | *Hinson v. Dawson, infra* (reckless and wanton disregard of and indifference to the rights and safety of others) (entrusting car to one with defective vision); |
| Oklahoma: | *Morgan v. Bates,* 390 P. 2d 486 (Okla. 1964) (malice or evil intent, or such gross negligence as would be deemed equivalent to evil intent) (90 m.p.h. after dark around curve, tried to pass car and car went out of control); |
| Oregon: | *Dorn v. Wilmarth,* 254 Or. 236, 458 P. 2d 942 (1969) (wanton and reckless misconduct) (drunken driving and smashing through wall of house); |
| Pennsylvania: | *Focht v. Rabada,* 217 Pa. Super. 35, 268 A. 2d 157 (1970) (outrageous conduct, a reckless indifference to the interest of others) (while intoxicated, released brake and allowed car to crash into car injuring plaintiff standing in front of it and tried to flee); |
| South Carolina: | *Hicks v. Herring,* 246 S. C. 429, 144 S.E.2d 151 (1965) (reckless disregard of rights and safety of others) (driving at excessive speed and dangerously attempting to pass car trying to turn); |
| Tennessee: | *Honaker v. Leonard,* 325 F. Supp. 212 (E.D. Tenn. 1971) (wilful misconduct or entire want of care which raises presumption of conscious indifference to consequences) (speeding and drag racing); |
| Texas: | *Goff v. Lubbock Bldg. Products, infra* (conscious indifference of rights or welfare of others) (negligent entrustment of truck to minor). |

to injure or of *actual malice* toward the injured person, but in which the defendant's conduct is of such an extraordinary [or outrageous] character as possibly to be the legal equivalent of such actual intent or actual malice, sometimes described as 'wanton,' 'reckless disregard of the rights of others,' and the like." *Conklin, supra,* at 71 (emphasis in original). At the same time, we perceive from some of the reported decisions the danger of formulating a test which may be so flexible that it can become virtually unlimited in its application.

Our inquiry focuses now on whether, as defendants contend, *Davis, supra,* restricts the allowance of exemplary damages to factual situations which reveal an actual intent to injure or actual malice. This question must be approached by an examination of the facts disclosed by the opinion in that case. At the very outset, it should be noted that contrary to defendants' argument, there was no evidence in *Davis* of drinking by any of the parties; nor, apparently, was there evidence of excessive speed. Davis, the driver, testified that he was blinded by the lights of two oncoming vehicles. Thus, the sole instance of improper conduct attributed to Davis was his flight from the scene which, although perhaps relevant, was not a causative factor in the accident. No test or standard that would allow exemplary damages on such meager facts has been urged upon us, and we are aware of no authority that would have supported a contrary result in *Davis.*

That we have not read *Davis* as narrowly as defendants would suggest, is evident, we think, from our recent decision in *St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 278 A. 2d 12 (1971), where, although we rejected an allowance of exemplary damages in a contract action, Judge Smith, speaking for the Court, said:

> "It is true, as St. Paul urges, that there has been discussion in the Maryland cases of wanton conduct as permitting the recovery of punitive damages. These cases include *Moore v.*

*Schultz,* 31 Md. 418 (1869) ; *Sloan v. Edwards,* 61 Md. 89 (1883) ; *Philadelphia, W. & B. R.R. v. Hoeflich,* 62 Md. 300 (1884) ; *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 20 A. 2d 485 (1941) ; *Heinze v. Murphy,* 180 Md. 423, 24 A. 2d 917 (1942) ; *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 56 A. 2d 813 (1948) ; and *Vancherie v. Siperly,* 243 Md. 366, 221 A. 2d 356 (1966). Comfort is derived from such comments as that of Judge Delaplaine for the Court in *Baltimore Transit Co. v. Faulkner,* where at page 602 'wanton' was defined as: 'Characterized by extreme recklessness and utter disregard for the rights of others.' *None of these cases arose from contract actions.* We interpret the language of those cases which speak of wanton conduct or wantonness as being a basis for awarding punitive damages as referring to such conduct as would carry an *implication* of malice or as conduct from which one would draw a *necessary inference* of malice, conduct from which one might determine the existence of actual malice." 262 Md. at 238-39 (emphasis added).

In their brief, plaintiffs have argued with considerable force that there is a useful precedent to be invoked here in our decisions dealing with the crime of manslaughter by motor vehicle. The applicable criminal statute has been interpreted as requiring proof of gross negligence, which has been defined in this context as "a wanton or reckless disregard for human life." *Romanesk v. Rose,* 248 Md. 425, 237 A. 2d 12 (1968) ; *Wasileski v. State,* 241 Md. 323, 324, 216 A. 2d 551 (1966) ; *Johnson v. State,* 213 Md. 527, 132 A. 2d 853 (1957). This is a test which may well have been foreshadowed by, and is barely distinguishable from, at least two tests mentioned by Judge Barnes in *Conklin,* viz., " 'reckless disregard of the rights of others,' " 255 Md. at 71, and " 'intentional disregard

of [the] duty of due care for the safety of others.' " *Id* at 77.

We regard a "wanton or reckless disregard for human life" in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice. It is a standard which, although stopping just short of wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character. Yet, it is both a functional and definitive test which, as we have noted, enjoys the virtue of having been frequently applied in this state. And if, as a test, it has been regarded as adequately stringent to serve as a basis for possible imprisonment, then, surely, there appears to be no valid reason for deeming it too liberal for imposing civil sanctions. We hold that it is the standard by which claims for exemplary damages arising out of motor vehicle operation are to be tested.

Since we recognize that the adoption of such a rule frequently tends to appear invitational, a caveat is in order concerning the pleading and proof requirements which we shall impose in future cases. As we shall note later, the allegations relied upon here by plaintiffs are set forth in considerable detail in the complaint. Such particularity may well serve as a benchmark for pleading a case of exemplary damages, at least in motor vehicle cases. No bald or conclusory allegations of "wanton or reckless disregard for human life," or language of similar import, shall withstand attack on grounds of insufficiency. It follows from what we have said that far greater specificity will be required than that reflected by the "Appendix of Forms" accompanying the Maryland Rules. *cf. Myers v. Montgomery Ward & Co.*, 253 Md. 282, 252 A. 2d 855 (1969) ; *Read Drug & Chem. Co. v. Colwill Constr. Co.*, 250 Md. 406, 243 A. 2d 548 (1968).

We turn now to a consideration of whether the allegations of counts three and four of the complaint set forth facts showing "a wanton or reckless disregard for human life." In so doing, we are mindful that a 12(b)(6) Motion to Dismiss under the Federal Rules of Civil Pro-

cedure, being a lineal descendant of the common law demurrer, requires that the complaint be construed in a light most favorable to plaintiffs and that its well-pleaded allegations be taken as true. Wright & Miller, *Federal Practice and Procedure*, Civil § 1357.

Count three of the complaint, directed solely at the corporate defendant (Gray) is founded upon the theory of negligent entrustment which has been expressly recognized in Maryland. *Snowhite v. State, Use of Tennant*, 243 Md. 291, 221 A. 2d 342 (1966) ; *Rounds v. Phillips*, 166 Md. 151, 170 A. 532 (1934).

The substance of count three, as it relates to the cause of the accident and the prayer for exemplary damages, is as follows: On the date in question, July 19, 1970, Gray entrusted a Ford "flatbed" truck to its employee (Edwards) to transport a load of concrete pipe from its plant at Springfield, Virginia to a work site in Laurel, Maryland. Edwards was then an 18-year-old laborer, with no previous experience in driving the vehicle or a similar vehicle, who possessed no chauffeur's license. That, Gray knew, or should have known, Edwards to be an untrained, unqualified and incompetent driver.

Although Gray knew that the two strands of baling wire holding the hood were unsafe and inadequate to prevent the hood from flying up and obscuring the driver's vision, as it had in the past, it deliberately sent the truck out on the road.

Knowing that it was obligated by law to insure that its drivers were over 21 years of age, possessed current medical certificates and chauffeurs' licenses, and that they were adequately informed of safety regulations and procedures before allowing them to drive company trucks, Gray allowed Edwards to drive on the highway aware that he met none of those requirements. Gray knew, or should have known, that Edwards' only past experience in driving was with a wrecking crane in Washington, D. C. between January 27 through May 15, 1970, that during this time he had three driving accidents on the job, received three traffic violation citations, and finally was fired for "hot rodding."

Gray knew or should have known that the truck was completely uncontrollable at any speed in excess of 50 m.p.h. and was being operated upon an interstate highway with a 70 m.p.h. speed limit and a requirement that any vehicle being operated as much as 10 m.p.h. below that limit be operated upon the shoulder or righthandmost lane. The truck then manifested 15 violations of I.C.C. safety regulations in addition to the violations regarding driver qualifications and the inspection and maintenance records concerning vehicles. The truck was loaded illegally overwidth, but possessed no overwidth permit, although the company knew that such permits were required, and was loaded in such a fashion that the rearview mirrors were obstructed. Gray knew or should have known that the disabled vehicle's (four-way flasher) switch was inoperable; and that there was no rear underride protection on the truck, which was known or should have been known by Gray.

As Edwards approached the scene of the accident, the two strands of baling wire holding down the hood gave way, and the hood flew up thereby blinding the driver. The driver pulled into the middle lane of the 70 m.p.h. freeway, and stopped the truck without emergency flashers when, instead, he could have pulled it to the right off the shoulder and safely stopped.

Count four is aimed at both defendants and seeks damages from Edwards for negligent operation, and from Gray as his employer on the basis of agency. It discloses that Edwards undertook to operate the truck without having first inspected it to determine its mechanical condition; that Gray, prior to the accident, had never instructed Edwards regarding the proper method of determining that the truck was in safe operating condition prior to driving it on the highway, and had made no determination of whether Edwards was aware of how to do so. That, when the hood flew up, Edwards failed to pull his truck to the side of the roadway, and instead pulled it into the center lane of the 70 m.p.h. interstate highway; that both defendants knew or should have

known that the truck was precariously loaded, was impossible to control in excess of 50 m.p.h., was in violation of many requirements of law, and that the hood was precariously fastened and might come undone at any time.

With respect to the claim against Edwards in count four, we are of the view that said conduct, although constituting sufficient negligence to support a claim for compensatory damages, does not mount up to "a wanton or reckless disregard for human life." Simply stated, there is absent the "extraordinary or outrageous" conduct on Edwards' part which we have said must attend the operation of a motor vehicle in order to sustain a claim for exemplary damages. What plaintiffs allege is a breach of duty by Edwards in operating a truck without being assured of its condition, and a failure to respond correctly to the emergency confronting him when the hood flew up. The failure to respond properly under exigent circumstances underscores the very distinction we make between a situation reflecting "mere" negligence, for which compensatory damages are available, and that which we say may entitle an injured party to exemplary damages.

It follows that since exemplary damages are not recoverable against Edwards, neither may Gray be liable therefor on the basis of agency.

The case against Gray under count three is an entirely different matter. Exemplary damages in negligent entrustment cases have been upheld by other courts. *Jackson v. Co-op Cab Company,* 102 Ga. App. 688, 117 S.E.2d 627 (1960); *Soucy v. Greyhound Corporation,* 27 App. Div. 2d 112, 276 N.Y.S.2d 173 (1967); *Hinson v. Dawson,* 244 N.C. 23, 92 S.E.2d 393, 62 A.L.R.2d 806 (1956); *Plummer v. Henry,* 7 N. C. App. 84, 171 S.E.2d 330 (1969); *Goff v. Lubbock Bldg. Products,* 267 S.W.2d 201 (Tex. Civ. App. 1953). The facts in the latter case bear a striking similarity to those here. There, a contractor's superintendent hired a 16-year-old boy and permitted him to drive a truck though he had no driver's license,

and allowed him to continue to drive after a faulty condition of the truck's brakes had been reported to him. The court held that in those circumstances exemplary damages were recoverable under the Texas statute allowing them for "gross negligence," a standard which the Texas court defined as "an entire want of care which would raise a presumption of a conscious indifference to consequences." 267 S.W.2d at 205.

The salient feature of the case at bar is that the conduct of Gray which subjects it to possible exemplary damages did not occur under the pressures of a highway crisis, where what might superficially appear to be caused by "extraordinary or outrageous conduct" could be merely the result of poor judgment exercised under such circumstances. Rather, the conduct alleged here reflects a premeditated decision, deliberately arrived at, by an indifferent employer in possession of facts which should have indicated almost certain harm to others. We cannot imagine a more striking case of "wanton or reckless disregard for human life."

We are not to be understood as indicating, much less holding, that exemplary damages are recoverable in all negligent entrustment cases. Nor do we find it necessary to say now whether they may be recoverable on any other basis. We merely hold that the facts alleged in count three establish the "extraordinary or outrageous" conduct which mounts up to "a wanton or reckless disregard for human life."

Thus, we are of the view that the complaint states "a claim upon which punitive damages may be awarded pursuant to Maryland law[.]"

> Question of law answered as
> herewith set forth; costs to
> abide result.

*Smith, J., dissenting:*

In *St. Paul at Chase v. Mfrs. Life Insur.*, 262 Md. 192, 278 A. 2d 12 (1971), the trial judge entered an award

for punitive damages against one defendant on a count claiming negligent performance of a contract. We reversed. It was contended that there had been discussion in the Maryland cases of "wanton conduct" as permitting the recovery of punitive damages. We listed certain of those cases. The plaintiff there derived comfort from such comment as that of the Court in *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 602, 20 A. 2d 485 (1941), where "wanton" was defined as "characterized by extreme recklessness and utter disregard for the rights of others." We took occasion to say:

> "We interpret the language of those cases which speak of wanton conduct or wantonness as being a basis for awarding punitive damages as referring to such conduct as would carry an implication of malice or as conduct from which one would draw a necessary inference of malice, conduct from which one might determine the existence of actual malice. There is no evidence of malice in this case." *Id.* at 239.

Therefore, I would answer the question that punitive or exemplary damages are not recoverable upon the complaint as drawn in this case since it alleges neither malice nor "such conduct as would carry an implication of malice or . . . conduct from which one would draw a necessary inference of malice, conduct from which one might determine the existence of actual malice."

In *Davis v. Gordon,* 183 Md. 129, 133, 36 A. 2d 699 (1944), Chief Judge Sloan for the Court quoted with approval from *Philadelphia, W. & B. R.R. v. Hoeflich,* 62 Md. 300 (1884), where Judge Robinson said for our predecessors:

> "[T]o entitle one to [punitive] damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act." *Id.* at 307,

elements lacking in this case. *Davis,* too, was an automo-

bile tort case. This Court declined there to permit recovery of punitive damages since there was "no evidence of fraud, motive or intention on the part of the defendant. . . ." *See also Associates Discount v. Hillary,* 262 Md. 570, 278 A. 2d 592 (1971) ; *Damazo v. Wahby,* 259, Md. 627, 638-39, 270 A. 2d 814 (1970) ; and *Baltimore & O.R.R. v. Boyd,* 63 Md. 325 (1885).

One can envision a set of facts which might be a basis for punitive damages in a motor vehicle tort action. For instance, in *Hughes v. State,* 198 Md. 424, 84 A. 2d 419 (1951), a labor dispute was in process in Western Maryland. After a confrontation with pickets a truck driver discovered "a board with a number of long nails through it . . . fastened to [his truck's] dual rear wheels on the outside and two other nails were imbedded in the same wheel." The trial court found that the defendant turned his truck to the right "intending only to scare the pickets grouped around the cars near the cemetery gate, by swerving near them. . . . Unfortunately, he went too close and struck the two men and [a] car, not with the front of his truck, but with the right rear end." One man died. This Court affirmed a finding by the trial court that the defendant was guilty of manslaughter. A set of circumstances similar to that in *Hughes* might well show such malice or intent as would justify an award of punitive damages. No such facts are averred in the declaration here.

The issue is not what we might or might not regard as a desirable rule for damages, but what the existing rule is. To me it is clear that the existing rule does not permit recovery of punitive damages under the facts set forth in this declaration. Therefore, if the law is to be changed, it should be done by the General Assembly. Otherwise, to use the words of *Herring v. Christensen,* 252 Md. 240, 242, 249 A. 2d 718 (1969), we "eliminate the consistency and stability in this Court's rulings which are necessary for our citizens to know their respective rights and obligations." We have no constitutional issue involved here that mandates change, but only

the question of what is a desirable rule for the recovery
of damages, a matter clearly within the province of the
General Assembly.